[No. B182738. Second Dist., Div. Seven. May 19, 2006.]

TAMEKA ROSS, Plaintiff and Respondent, v.
OSCAR FIGUEROA, Defendant and Appellant.

COUNSEL

John B. Chason for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

OPINION

**JOHNSON, J.**—This is a domestic violence case in which a woman sought a permanent restraining order against her former boyfriend. As is common in such proceedings, both sides appeared propria persona. For that reason we were not surprised the hearing proceeded rather informally. But what we found in this instance was a hearing short on due process, especially for the party facing the prospect of a three-year restraining order, including denial of a continuance to which that party was entitled as a matter of law. We feel it necessary to reverse and remand for a proper hearing where appellant is given the opportunity to challenge respondent's evidence and also to present affirmative evidence in his defense and where respondent likewise has the same meaningful opportunity to be heard.

### FACTS AND PROCEEDINGS BELOW

Respondent Tameka Ross and appellant Oscar Figueroa were in a live-in relationship for a considerable period before Ross sought to terminate the relationship. On January 13, 2005, she filed a form requesting an ex parte temporary restraining order against Figueroa and setting a February 3, 2005 hearing date for the court's consideration of whether to make the order permanent. Commissioner Randall F. Pacheco granted the temporary restraining order (TRO) ex parte without prior notice to Figueroa. This order included a section labeled "Time for Service" which advised Ross she was required to serve a copy of the order (and its notice of the February 3 hearing) on Figueroa "at least 5 days before the hearing." That same section advised Figueroa "[i]f you want to respond in writing, someone 18 or over—**not you**—must 'serve' Form DV-120 on" Ross.

On February 3, 2005, both parties appeared for the required hearing before temporary referee, Susan Baumberger. Ross was accompanied by her mother, who was serving as the "support person" permitted by Family Code section 6303, subdivision (b).[1] Figueroa was alone. Ross's mother initially sat

---

[1] All further statutory references are to the Family Code unless otherwise indicated.

next to Ross, but the referee soon told her only a party and the party's lawyer were allowed to sit at the table and ordered her to return to the audience area of the courtroom. Unless the referee conducted a mass "swearing-in" of all parties appearing that day prior to calling this case, something not reflected or implied in the transcript of the hearing, neither Ross nor Figueroa was sworn as a witness at any time when speaking at the hearing.

At the outset of the hearing, Figueroa requested a continuance for two reasons. First, he had not had time to get a lawyer. And second, he had not figured how to get his response and accompanying written evidence served on Ross without violating the TRO's prohibition against sending any written communications to her.

At first, the referee appeared inclined to grant the requested continuance, conditioned on maintaining the temporary protective order in place until the new hearing date. Figueroa expressed no objection to that course of action. However, Ross and her mother objected to a continuance and the fact they would have to take time off work again in order to attend the second hearing. Ultimately the referee denied the continuance and proceeded to summarily grant the requested permanent protective order, for the maximum period of three years.

At the time the referee ruled, the only evidence before her was the form request for the temporary protective order which Ross had submitted on January 13. This form was signed under penalty of perjury and included a narrative statement from Ross describing the events leading to her need for a protective order. She also attached some letters she said had been written by Figueroa and contained what she characterized as threats of violence against her. The referee did not take any oral testimony from Ross, nor did she ask Figueroa whether he wanted to challenge any of the statements in the written submission. Moreover, when Figueroa asked whether he could submit evidence of his own, the referee answered, "no."

Only when the referee began summarizing what the protective order prohibited and reached the firearm restriction did Figueroa have an opportunity to contradict any of the claims in Ross's written submission. In her narrative statement, Ross had said Figueroa had a handgun which he kept under the seat in his automobile. But when the referee instructed Figueroa he would have to surrender any firearms he owned or possessed, he denied having any such weapon or indeed any firearms whatsoever. Whether he

would have disputed other factual statements in Ross's submission it is impossible to know, since the referee had previously denied him the opportunity to do so.

## DISCUSSION

It is rare for a Court of Appeal to get a peek into the world of domestic violence proceedings, because these protective orders are nearly never appealed. We know something about these proceedings, not so much from the appellate brief and oral arguments, but because of judicial administration studies and innovations over the past few years.[2] We know the litigants, both plaintiffs and defendants, are unrepresented by counsel in the vast majority of cases—as was true here.[3] We also know this fact influences how these hearings should be conducted—with the judge necessarily expected to play a far more active role in developing the facts, before then making the decision whether or not to issue the requested permanent protective order.[4] In such a hearing, the judge cannot rely on the propria persona litigants to know each of the procedural steps, to raise objections, to ask all the relevant questions of witnesses, and to otherwise protect their due process rights. We have some concerns about how the trial court conducted the hearing in this particular case. But first we consider whether this hearing should have been held when it was or whether the trial court was compelled by statute to honor appellant's request for a continuance.

I. *APPELLANT WAS ENTITLED TO AN AUTOMATIC CONTINUANCE UNDER SECTION 243, SUBDIVISION (e), WHICH THE COURT IMPROPERLY DENIED.*

Section 243, subdivision (e) provides respondents are entitled as a matter of right to a continuance when they first appear at a hearing where a permanent order is being considered, if but only if the temporary order was

---

[2] See, e.g., Judicial Council of California, Domestic Violence Courts: A Descriptive Study (2000).

[3] "In domestic violence restraining order cases, litigants are reported to be pro se over 90 percent of the time." (Hough, Description of California Courts' Programs for Self-Represented Litigants—prepared for meeting of the International Legal Aid Group—Harvard 2003, at pp. 47–48. <www.courtinfo.ca.gov/programs/equalaccess/documents/harvard.pdf> [as of May 19, 2006].)

[4] See, e.g., Albrecht et al., *Judicial Techniques for Cases Involving Self-Represented Litigants* (Winter 2003) 42 The Judges' J. 16.

"*issued* without notice."[5] This is to allow the respondent "reasonable time" to respond to the applicant's grounds for seeking the protective order. The respondent also is entitled to have received the order to show cause and supporting documents "at least five days before the hearing."[6]

If, on the other hand, the court issued the TRO only after notice was given to the responding party, there is no right to an automatic continuance of that hearing. There is, however, a right to receive the order to show cause and supporting documents "at least 15 days before the hearing."[7]

In appellant's brief, his counsel concedes there is no document in the record expressly stating the court issued the TRO before giving notice to Figueroa, thus bringing section 243(b) into play and creating an entitlement to a continuance under section 243, subdivision (e). He argues, however, this lack of notice can be reasonably inferred from several factors: first, the absence of any declaration in the court record indicating notice was given to Figueroa before the TRO hearing, second, the shortened time for service of the TRO on Figueroa, and third, the absence in the hearing transcript of any mention he had received notice before the TRO issued when the request for a continuance was being discussed. We observe further support for respondent's position can be gleaned from the fact Ross's request for the TRO was

---

[5] Section 243, subdivision (b), italics added. Section 243 reads in its entirety as follows:

"(A) When the matter first comes up for hearing, the applicant must be ready to proceed.

"(b) If an order described in Section 240 has been issued without notice pending the hearing, the applicant must have served on the respondent, at least five days before the hearing, a copy of each of the following:

"(1) The order to show cause.

"(2) The application and the affidavits and points and authorities in support of the application.

"(3) Any other supporting papers filed with the court.

"(c) If an order described in Section 240 has been issued with notice pending the hearing, the applicant must have served on the respondent the documents described in subdivision (b) at least 15 days before the hearing.

"(d) If the applicant fails to comply with subdivision (a) and either subdivision (b) or (c), the court shall dissolve the order.

"(e) If service is made under subdivision (b), the *respondent is entitled, as of course, to one continuance for a reasonable period,* to respond to the application for the order.

"(f) On motion of the applicant or on its own motion, the court may shorten the time provided in this section for service on the respondent.

"(g) The respondent may, in response to the order to show cause, present affidavits relating to the granting of the order, and if the affidavits are served on the applicant at least two days before the hearing, the applicant is not entitled to a continuance on account of the affidavits." (Italics added.)

[6] Section 243, subdivision (b) (hereafter section 243(b)).

[7] Section 243, subdivision (c) (hereafter section 243(c)).

stamped as being received on January 12th and filed on January 13th. The court issued the TRO and notice for a hearing on the permanent restraining order on the 13th. Unless Ross provided written notice to Figueroa she was seeking a TRO before she even submitted her request, an unlikely scenario, the single day or less between when she gave the court her written request and when the court issued the TRO seems too short a period for notice to have been given to respondent.

But the most persuasive evidence is found in the court order itself. It instructs Ross she must serve Figueroa with a copy of that order "at least *five* days before the hearing"[8]—the time period provided under section 243(b) when a TRO has been issued without prior notice to the responding party. Had Figueroa received notice prior to the ex parte hearing on the TRO the court would have been compelled to fill out this section of the court's order to state Ross must serve a copy "at least *fifteen days*" before the hearing as required by section 243(c). Thus, the content of the TRO and notice of hearing is consistent only with the conclusion this TRO was issued under section 243(b) not section 243(c) and the provisions of section 243, subdivision (e) apply. As a result, Figueroa was "entitled, as of course, to one continuance for a reasonable period"[9] and the court lacked discretion to deny him the continuance it denied.

There is a curious wrinkle in the facts of this case, but not one we conclude affects the outcome. As will be recalled, under section 243(b) when the court issues a TRO *without* prior notice, the applicant must serve the order to show cause and supporting documents on the respondent at least *five days before* the hearing on the permanent order. But under section 243(c), if the court issued that order *with* prior notice, the applicant must serve those same papers on the respondent at least *15* days before that hearing. Here Ross served the TRO, the order to show cause, and all the other required documents on Figueroa the very next day after the TRO issued, January 14th. That was fully *20* days before the hearing date for consideration of a permanent restraining order. Consequently, Figueroa had a longer time to prepare for that hearing than if he had received prior notice of the TRO before it was considered and issued.

---

[8] This section of the order contains a place for the court to write in a number indicating how many days before the hearing a copy of the order must be served on the responding party. In this instance, the court entered the number "5."

[9] Section 243, subdivision (e) (hereafter section 243(e)).

■ But does this anomaly mean Figueroa lost his entitlement to a mandatory continuance under section 243(e)? We think not. The fact Ross provided 15 days more notice than the minimum required when a TRO is issued without prior notice does not take this out of the definition in section 243(b) which qualifies Figueroa for a mandatory continuance. ■ Section 243(b) does not say it only applies if the applicant provided "precisely five days notice," or "no more than five days notice," or "between five days and 14 days notice," or "less than 15 days notice." It is silent on the upper limit of the notice period, and authorizes any notice of any length, so long as it is "at least five days" before the hearing. If a TRO has been issued against a respondent *without a prior notice,* and he or she is served with the required papers for the hearing on the permanent order *at least five days* before that hearing, the respondent has been served under section 243(b), no matter that notice was received 10 or 15 or 20 days before the hearing. And, if the respondent has been served under section 243(b), he or she "is entitled, as of course, to one continuance" under the terms of section 243(e).

It is true Figueroa was unaware of section 243 and its interrelated subdivisions and did not raise the argument he had an entitlement under that code section to a mandatory continuance. Instead he appealed to the trial court's discretion, urging he had reasons for needing a continuance. First, he needed more time to find a lawyer. Second, he had not been able to serve his written response on Ross, because he interpreted the TRO (erroneously) to preclude him from sending anything, even legal papers, to Ross. Finally, he evidently lacked enough time to get signatures on some of the written statements from his defense witnesses. The trial court wavered, but finally decided it was more important to save Ross and her mother the inconvenience and cost of attending a second hearing than to give Figueroa a second chance to supply written evidence in his defense. Thus, the court exercised its discretion to deny Figueroa his requested continuance.

In doing so, however, the trial court exceeded its discretion. The court simply lacked the discretion to deny Figueroa the continuance he requested because he was entitled to it as a matter of right under the terms of section 243(b) and (e). Especially in a forum which in practice must largely function without lawyers and where the judge, as a result, is expected to play an active role in protecting the rights of the parties, we are loath to conjure a waiver or forfeiture of Figueroa's statutory entitlement to a continuance from his failure to argue those grounds when seeking a continuance at the hearing. If

the trial court was aware of Figueroa's right to a continuance, it was duty bound to rule accordingly when a continuance was requested. If the court was not aware of this right, that may be unfortunate but certainly not a sufficient ground to affirm a clearly erroneous ruling.

II. *BECAUSE APPELLANT WILL BE ENTITLED TO A REHEARING IN THIS CASE SHOULD RESPONDENT ELECT TO PURSUE A PERMANENT RESTRAINING ORDER AFTER REMAND, THIS COURT NOTES SOME DUE PROCESS AND PROCEDURAL PROBLEMS THAT SHOULD BE AVOIDED IN FUTURE PROCEEDINGS.*

The form Figueroa received from the court notifying him of the hearing which would decide whether a permanent restraining order should be issued advised he was entitled to file a written response, if he served it on Ross no later than two days before the scheduled hearing. In no sense did this notice state or imply the filing of such a written opposition was a prerequisite Figueroa had to fulfill if he were to challenge Ross's written statement and accompanying papers. There is nothing in the notice or indeed anything in the code provisions suggesting this written statement is in the nature of a pleading—the functional equivalent of an "answer" in more formal civil proceedings—the absence of which would entitle the "plaintiff" to a default judgment. Nor is there anything in the notice or the applicable code provisions suggesting it is the substantial equivalent of a formal opposition to a summary judgment motion, which again if not filed might entitle the "moving party" to a judgment in its favor without a hearing.

To put it another way, nothing in the notice or in the procedural sections of the code suggests the responding party in one of these protective order cases is not free to challenge the issuance of a permanent order entirely through oral testimony at the hearing itself. Figueroa, along with any other responding party, might reasonably construe the notice as providing him an option to provide some or all of his evidence through a written submission prior to the hearing itself. The notice advises these parties they *may* submit such a written statement, not that they *must*.[10]

---

[10] The applicable section of the order served on responding parties is addressed to "Persons Served With Order" and tells them: "If you *want* to respond in writing" then you must serve and file it at least two days before the hearing. (Italics added.)

In the unlikely event it indeed is the practice in this or all domestic violence restraining order proceedings to require the responding party to submit a written response before being entitled to present any oral evidence in opposition to the moving party's allegations and evidence, the form notice used in this case would raise serious due process issues. A notice advising respondents they may, but not must, serve and file a written response is calculated to mislead, if indeed the failure to submit such a written response forecloses all other avenues for presenting evidence challenging the moving party's allegations and evidence. If that were the case, and we assume it is not, the court would have affirmatively deprived Figueroa and other respondents of their due process "opportunity to be heard" by misleading them about the consequences of failing to file a written statement prior to the hearing.

We seriously doubt this is a common or even uncommon practice in domestic violence proceedings before California courts. We have discussed the due process problems with such a procedure or practice only because the pro tempore referee in this case appeared to act as if this written statement were the only form of evidence Figueroa could use to challenge Ross's "request for restraining order" and accompanying documents. After his request for continuance had been denied and it was revealed Figueroa had a written statement but had not served it on Ross,[11] he asked the referee if he nevertheless could present this evidence. The referee merely answered "no," and proceeded to rule, granting a permanent injunction for the maximum period of three years.

At that point, especially in a proceeding largely used by propria personas and in which Figueroa was in fact participating on a propria persona basis, the referee should have advised Figueroa he could provide oral testimony, even though he would not be permitted to file the written statement he had failed to timely serve on Ross. It is true Figueroa had mentioned his witnesses were not present and thus he was in no position to offer their oral testimony. But he certainly could have testified himself and raised questions to be posed to Ross, had the referee advised him of his right to do so. The role of a judicial officer sitting in such a court, which has many attributes of an inquisitorial as opposed to an adversarial process, is different than when sitting in a purely adversarial court where the parties are presumed to be "well counseled" by skilled and knowledgeable lawyers.

---

[11] Evidently he had not read carefully or understood the explanation in the notice he received which told him he should arrange service on Ross through some person over the age of 18.

In a purely adversarial setting it is reasonable for the judge to sit back and expect a party's lawyer to know about and either assert or by silence forfeit even the most fundamental of the party's constitutional and statutory procedural rights. But not so in a judicial forum, such as this domestic violence court, which can expect most of those appearing before the court to be unrepresented. To that end, the code specifically allows a party in such a proceeding to be assisted by a nonlawyer "support person" who is permitted to sit with the litigant at counsel table unless that litigant has a lawyer.[12] It is not grounds for reversal here, because Ross, not Figueroa, is the aggrieved party. But it is revealing to note the pro tempore referee in this case ordered Ross's "supporting person," her mother, to return to the audience. Contrary to clear statutory language, the referee said, "The only people allowed at the table are the party litigant themselves or their attorneys." This flies in the face of section 6303 which expressly provides: "Where the party is not represented by an attorney, the support person may sit with the party at the table that is generally reserved for the party and the party's attorney."[13]

No "support person" accompanied Figueroa and it obviously would have been no help if one had, because it is difficult to provide assistance of any kind from the audience. But in any event, it is the judge and not the party or the party's nonlawyer "support person" who can be expected to know and protect the litigant's procedural rights. Accordingly, here it was incumbent on the referee to apprise Figueroa it was his right to present oral testimony when Figueroa indicated he wanted to put on a defense by asking whether he could tender the written evidence he had prepared but not served.

It is entirely possible, of course, the referee or some other judicial officer apprised everyone appearing in this domestic violence court about their fundamental rights either orally or by providing them a written summary of the court's procedures. It also is possible this announcement included their

---

[12] Section 6303 provides in pertinent part:

"(a) . . . The person who alleges that he or she is a victim of domestic violence may select any individual to act as a support person. . . .

"(b) A support person shall be permitted to accompany either party to any proceeding to obtain a protective order . . . . Where the party is not represented by an attorney, the support person may sit with the party at the table that is generally reserved for the party and the party's attorney."

[13] Section 6303, subdivision (b), quoted in footnote 12, *ante.*

rights to present oral testimony themselves. But nothing in the record before this court demonstrates or even implies anything like this occurred. Nor is there any indication Figueroa received any "self-help assistance"[14] or even that such assistance was available to unrepresented parties appearing in this particular court on this particular day. Presumably, had Figueroa had the opportunity to obtain such assistance, and taken advantage of it, he would have been informed, among other things, of his entitlement to offer oral testimony in support of his defense to the alleged victim's charges.

Because Figueroa was denied the continuance to which he was entitled as a matter of law, we find it necessary to order a new hearing to consider whether the restraining order shall be made permanent. In that hearing, Figueroa should be afforded the opportunity to present written evidence (if he serves it timely on Ross) as well as oral testimony from himself and other witnesses. On the other hand, we are not inclined to immediately dissolve the current protective order. Ross accompanied her request for a TRO and hearing on a permanent order with sufficient admissible evidence to support a permanent order, if that evidence was not undercut by evidence Figueroa presented. This is not a case where we are reversing because we found the moving party's evidence inadmissible or insufficient to support an order. Rather we are reversing to allow the responding party the continued hearing to which he was statutorily entitled at which he is offered the opportunity to dispute the moving party's claims and evidence. Accordingly, we will leave the protective order in force until 30 days after issuance of this court's remittitur. During that time, we expect the court to hold a hearing on whether that order should extend further into the future, but in no instance shall the court approve an extension beyond the date the order under review would expire, February 3, 2008.

---

[14] In the past few years, the California court system has encouraged the creation of various facilities and centers devoted to providing unrepresented litigants with advice and assistance, but not in-court representation, particularly in family law cases. See, e.g., Judicial Council of California—Task Force on Self-Represented Litigants, Statewide Action Plan for Serving Self-Represented Litigants (2003); Judicial Council of California, A Report to the California Legislature—Family Law Information Centers: An Evaluation of Three Pilot Programs (2003). There is nothing in the record on appeal revealing whether such assistance was available at the courthouse in which this case was heard or on the day it was heard.

## DISPOSITION

The judgment is reversed and the cause remanded to the trial court with instructions to hold a new hearing within 30 days after issuance of this court's remittitur, if Ross still desires a protective order, at which hearing both parties shall be allowed to present oral as well as written evidence. It is further ordered the protective order remain in force until the conclusion of this new hearing or 30 days after the issuance of the remittitur, should no such hearing take place. Should there be a hearing and the trial court determines proper grounds exist for continuation of a protective order, it may issue a permanent protective order for the original term, that is, through February 3, 2008, or a lesser period of time. Each party to bear its own costs on appeal.

Perluss, P. J., and Zelon, J., concurred.

On May 22, 2006, the opinion was modified to read as printed above.