[No. B197860. Second Dist., Div. Seven. Oct. 24, 2007.]

MARIA ELENA GONZALEZ, Petitioner and Appellant, v.
MAURELIO FRANCISCO MUNOZ, Defendant and Respondent.

## Counsel

Legal Aid Foundation of Los Angeles, Laura C. Fry; Western Center on Law & Poverty and Richard A. Rothschild for Petitioner and Appellant.

Erin M. Dabbs, Rachel Kronick Rothbart and Betty L. Nordwind for Harriet Buhai Center for Family Law, Bay Area Legal Aid, Break the Cycle, California Partnership to End Domestic Violence, California Women's Law Center, Los Angeles County Bar Family Law Section, Los Angeles Center for

Law and Justice and Women Lawyers Association of Los Angeles as Amici Curiae on behalf of Petitioner and Appellant.

No appearance for Defendant and Respondent.

## OPINION

**PERLUSS, P. J.**—The Domestic Violence Prevention Act, Family Code section 6200 et seq. (DVPA),[1] authorizes the trial court to make an ex parte order "determining the temporary custody and visitation of a minor child" (§ 6323, subd. (a)(1)), provided the party seeking the temporary order has established a parent-child relationship by one of the means specified in the DVPA, which includes proof the party gave birth to the child (§ 6323, subd. (a)(2)(B)(i)). Section 6340, in turn, authorizes the court, after notice to the party to be restrained and a hearing, to issue "any of the orders described" in sections 6320 through 6327 and directs the court, when determining whether to do so, to "consider whether failure to make any of these orders may jeopardize the safety of the petitioner and the children for whom the custody or visitation orders are sought." (§ 6340, subd. (a).)

At the request of Maria Elena Gonzalez, the trial court in this case granted ex parte a temporary restraining order to protect Gonzalez and her three-year-old daughter from Maurelio Francisco Munoz, issued personal conduct and stay-away orders and granted temporary physical and legal custody of the child to Gonzalez with no visitation to Munoz until the next court hearing. Following notice to Munoz and a hearing, the court extended for a period of one year the personal conduct and stay-away restraining orders. Apparently concerned by section 6323, subdivision (b), which prohibits the court from making a paternity determination in a DVPA proceeding and provides DVPA orders are "without prejudice in any other action brought to establish a parent and child relationship," and notwithstanding the express language in section 6340, the court concluded it lacked the authority to also extend its temporary child custody order.

According to Gonzalez's counsel and the amici curiae who have filed a brief on her behalf, the trial court's decision to decline to issue custody and visitation orders following a hearing in this case was not an isolated event, but rather represents a common misunderstanding by bench officers handling DVPA proceedings in the Los Angeles Superior Court. As a result, although subsequent proceedings have mooted the custody and visitation questions in this case, because of the significant public issue involved, capable of repetition yet evading review, we consider the appeal, explain the nature and scope

---

[1] Statutory references are to the Family Code.

of the authority of the trial court to issue custody and visitation orders in DVPA cases and reverse the order to the extent the court declined to exercise its discretion to award custody to Gonzalez.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 9, 2007 Gonzalez filed a request in propria persona under the DVPA for a temporary restraining order against Munoz, whom she identified as the father of her three-year-old daughter, Flor. On the form required to initiate this proceeding, Gonzalez checked a box indicating she and Munoz "used to live together" but did not check either of the boxes used to indicate she and Munoz "are now" or "used to be married." She also checked boxes requesting personal conduct orders barring him from harassing and contacting her and a stay-away order requiring him to stay at least 100 yards away from Gonzalez herself, her daughter, her home, job and workplace and her daughter's school or childcare. Finally, she checked boxes asking "the court to order child custody, visitation, and/or child support" and spousal support, even though the last item is expressly restricted to marital or registered domestic partner relationships. To document her entitlement to the requested orders, she attached a page stating in part, "[Munoz] has been violent throughout the relationship. [¶] He has hit me with his fists in the face, splitting my lip open and breaking my nose. He has strangled me forcefully so that I could not breathe. [¶] . . . [¶] [He] has been arrested for domestic violence in . . . August of 1999 and again in . . . April of 2004. [¶] In . . . May of 2006 [he] burned my hand with hot grease . . . [and] hit my 3 year old daughter . . . . [¶] Yesterday [he] showed up at my house and told me he was taking my daughter. I told him he could not take her and he became furious and started . . . trying to strangle me again. I had my daughter in my arm and I was able to get away from him. I was terrified and my daughter was screaming. [¶] Then [he] said to me 'I'm going to fuck you up good!' . . . I called the police and they came but he had already left." As a result of this conduct, Gonzalez stated she was "terrified that he will hurt me again . . . . [¶] [H]e has never cared for our daughter alone and is an alcoholic and I know my daughter is not safe with him."

The bench officer granted Gonzalez's request for a temporary restraining order, including the personal conduct and stay-away orders she sought, as well as an order granting her sole legal and physical custody of Flor and directing that Munoz have no visitation until the next court hearing. The court set a hearing on a permanent (up to five years) order for January 30, 2007.

Munoz was served with the temporary restraining order on January 11, 2007. On January 29, 2007 he filed an answer in propria persona agreeing to the stay-away order but refusing to agree to the personal conduct or child

custody and visitation orders. Although he checked a box indicating he is not the parent of Flor and objected to any order requiring him to pay child support, he asked for "reasonable visitation" on "weekends."

Both Gonzalez and Munoz appeared at the January 30, 2007 hearing in propria persona and spoke to the court through an interpreter. The court began the hearing by informing the parties it could make some "temporary orders under certain circumstances regarding custody and visitation" but was "forbidden from making a judgment of paternity. What that means is that I cannot make a legal ruling or a legal finding that you are in fact the parents of this child. In order for you to legally establish that you are the parents of this child, it will be necessary for you to file a separate civil lawsuit, which we refer to as a paternity case. . . . That is the legal method that is used for folks who are in your situation who are not legally married to each other, but have a child together." The court then asked Gonzalez if she had filed a paternity case. Obviously confused by the question, Gonzalez initially asked if the court meant "[t]he one right now?" The bench officer asked her again whether she had filed "a separate petition to establish the parent-child relationship," to which Gonzalez answered, "What would that be?" The bench officer explained again he was speaking of "a separate lawsuit . . . to establish that you are the mother and that Mr. Munoz is the father of this particular child" and renewed his question. This time, Gonzalez answered, "Not right now." When Munoz also confirmed he had not filed a paternity suit, the court stated, "I would certainly recommend to you both that you do so, because once you legally establish that you are the parents of this child, then for all time your child will be able to receive benefits from you and to inherit from you. . . . I think it would benefit your child, and I think it would make life easier for you as well."

Having offered this advice, the court turned to the restraining orders. Munoz agreed to stay away from Gonzalez and not to harass or otherwise bother her. The court then asked Gonzalez if she believed this agreement would be "sufficient to protect [her]," to which Gonzalez replied, "Yes." The court agreed to keep the order in effect for a year, which he said "ought to give each of you ample opportunity to file your paternity case to discuss the issues of custody, visitation and support, all the while making sure everybody stays safe." As the hearing concluded, Gonzalez asked the court about child support, plainly not having understood the significance of the court's discussion about a paternity proceeding. The court explained once more she needed to file a paternity action to obtain child support, and the hearing adjourned. The restraining order issued by the court included the personal conduct and stay-away orders discussed, but did not name Flor as a person protected by the stay-away order, as had the temporary restraining order, and did not address custody or visitation.

On February 21, 2007 Gonzalez filed a petition for writ of mandate in this court, which was denied, and on March 12, 2007 a notice of appeal. Soon thereafter, Munoz sought issuance of an order to show cause for custody and visitation in an action brought against him by the County of Los Angeles for child support. A hearing on the order to show cause was held on April 18, 2007 at which custody of Flor was granted to Gonzalez, and Munoz was granted supervised visitation for four hours each Sunday.

## CONTENTIONS

Gonzalez contends the trial court erred by failing to award her custody of her daughter during the pendency of the restraining order, as authorized (and even mandated) by the DVPA to ensure her daughter's safety.[2]

## DISCUSSION

### 1. *Mootness Does Not Bar This Appeal*

"An appellate court will not review questions which are moot and which are only of academic importance." (*Keefer v. Keefer* (1939) 31 Cal.App.2d 335, 337 [87 P.2d 856]; see *Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 10 [244 Cal.Rptr. 581].) A question becomes moot when, pending an appeal from a judgment of a trial court, events transpire that prevent the appellate court from granting any effectual relief. (*Consol. etc. Corp. v. United A. etc. Workers* (1946) 27 Cal.2d 859, 863 [167 P.2d 725]; *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 566 [101 Cal.Rptr.2d 86].)

Nonetheless, " ' "[i]f a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot." ' " (*Edelstein v. City and County of San Francisco* (2002) 29 Cal.4th 164, 172 [126 Cal.Rptr.2d 727, 56 P.3d 1029]; see also *Conservatorship of Wendland* (2001) 26 Cal.4th 519, 524, fn. 1 [110 Cal.Rptr.2d 412, 28 P.3d 151] [appellate courts have the "discretion to decide otherwise moot cases presenting important issues that are capable of repetition yet tend to evade review"].)

---

[2] No respondent's brief was filed by Munoz. In such a case we examine the record and consider the opening brief and oral argument, if any, to determine whether the trial court's ruling was prejudicial error. (See *Conness v. Satram* (2004) 122 Cal.App.4th 197, 200, fn. 3 [18 Cal.Rptr.3d 577]; Cal. Rules of Court, rule 8.220(a)(2).)

As this court observed just last year, "It is rare for a Court of Appeal to get a peek into the world of domestic violence proceedings, because these protective orders are nearly never appealed. We know something about these proceedings, not so much from the appellate brief and oral arguments, but because of judicial administration studies and innovations over the past few years." (*Ross v. Figueroa* (2006) 139 Cal.App.4th 856, 861 [43 Cal.Rptr.3d 289] (*Ross*).) These sources,[3] coupled with the facts of this case itself, convince us of the potential importance of the ruling below for a significant portion of the state's population,[4] many of whom, as we noted in *Ross* and as was true here, are unrepresented in DVPA proceedings. (139 Cal.App.4th at p. 861 & fn. 3 [estimated 90 percent of litigants in domestic violence restraining order cases appear pro se].) As we further observed, the high percentage of self-represented litigants (many of whom, again as here, do not speak English) places a special burden on bench officers who "cannot rely on the propria persona litigants to know each of the procedural steps, to raise objections, to ask all the relevant questions of witnesses, and to otherwise protect their due process rights." (*Id.* at p. 861.)

### 2. *Standard of Review*

A grant or denial of injunctive relief is generally reviewed for abuse of discretion. (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 849–850 [39 Cal.Rptr.2d 21, 890 P.2d 43].) This standard applies to a grant or denial of a protective order under the DVPA. (See *Quintana v. Guijosa* (2003) 107 Cal.App.4th 1077, 1079 [132 Cal.Rptr.2d 538].)

"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479 [243 Cal.Rptr. 902, 749 P.2d 339].) At the outset, however, we must determine whether the trial court applied the correct legal standard to

---

[3] In particular, we are mindful of the action taken by the Chief Justice in 2005 to create a task force charged with making recommendations to improve court practices and procedures in domestic violence cases, with the stated goals of " 'ensur[ing] fair, expeditious, and accessible justice for litigants in these critical cases . . . .' " (Judicial Council Domestic Violence Practice and Procedure Task Force, Draft Guidelines and Recommended Practices for Improving the Administration of Justice in Domestic Violence Cases (Jan. 2007) p. 4 <http://www.courtinfo.ca.gov/jc/documents/dvpptf_i2c.pdf> [as of Oct. 9, 2007].)

[4] In 2005 law enforcement officers in Los Angeles County alone received 45,684 calls for assistance related to domestic violence; California as a whole reported 181,362 such calls. (Cal. Dept. of Justice, Criminal Justice Statistics Center, Domestic Violence-Related Calls for Assistance (2005) <http://stats.doj.ca.gov/cjsc_stats/prof05/00/14.pdf> [as of Oct. 9, 2007].) While we have no way to determine how many of these calls generated a filing under the DVPA, even a small percentage would constitute a significant number of cases.

the issue in exercising its discretion, which is a question of law for this court. "The scope of discretion always resides in the particular law being applied; action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an abuse of discretion." (*Choice-in-Education League v. Los Angeles Unified School Dist.* (1993) 17 Cal.App.4th 415, 422 [21 Cal.Rptr.2d 303]; see *Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819, 833 [112 Cal.Rptr.2d 284]; *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297–1298 [255 Cal.Rptr. 704].)

### 3. *The Trial Court Erred in Failing to Issue a Final Order Granting Custody of Flor to Her Mother*

The DVPA authorizes issuance of an order restraining a person "for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved, if an affidavit . . . shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (§ 6300.) For purposes of the DVPA, "abuse" is defined as intentionally or recklessly causing or attempting to cause bodily injury, sexual assault or placing a person in "reasonable apprehension of imminent serious bodily injury." (§ 6203; *Conness v. Satram, supra,* 122 Cal.App.4th at p. 201.) Section 6320 authorizes the court to "issue an ex parte order enjoining a party from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, [and making] annoying telephone calls . . . , destroying personal property, contacting, either directly or indirectly, . . . coming within a specified distance of, or disturbing the peace of the other party, and, . . . other named family or household members."

Section 6323 further authorizes the court to make ex parte orders regarding temporary custody and visitation of minor children when the party establishes a parent-child relationship. Subdivision (a)(2)(A) of section 6323 provides: "In making a determination of the best interests of the child and in order to limit the child's exposure to potential domestic violence and to ensure the safety of all family members, if the party who has obtained the restraining order has established a parent and child relationship and the other party has not established that relationship, the court may award temporary sole legal and physical custody to the party to whom the restraining order was issued and may make an order of no visitation to the other party pending the establishment of a parent and child relationship between the child and the other party."[5]

---

[5] Section 3064 provides, "The court shall refrain from making an order granting or modifying a custody order on an ex parte basis unless there has been a showing of immediate harm to the child or immediate risk that the child will be removed from the State of California. 'Immediate harm to the child' includes having a parent who has committed acts of domestic

Pursuant to these sections, at Gonzalez's request, the trial court issued a temporary ex parte restraining order against Munoz that included an order granting her legal and physical custody of Flor and prohibiting visitation by Munoz pending notice to him and an evidentiary hearing under section 6340.[6] Section 6340 authorizes the extension—for as long as five years (§ 6345)—of any orders made at the time of the ex parte request, as well as issuance of any other orders described in sections 6320 through 6327, after considering evidence presented at the noticed hearing. Section 6340 expressly authorizes issuance of custody and visitation orders and specifically admonishes the court to consider "whether *failure to make any of these orders* may jeopardize the safety of the petitioner and the children for whom the custody or visitation orders are sought." (§ 6340, subd. (a), italics added.)[7] In other words, having made custody and visitation orders in the ex parte proceeding, the trial court here was charged with eliciting evidence as to whether Munoz could demonstrate a parent-child relationship with Flor and then, if he could do so, whether the earlier custody and visitation orders should be modified or extended to ensure the mutual safety of Gonzalez and Flor.

■ Notwithstanding the clear mandate of section 6340 and Munoz's complete failure to demonstrate, or even claim, a parent-child relationship with Flor, the trial court failed to extend the portions of its earlier order relating to Flor. Regrettably, we see nothing in the record to suggest the trial court even attempted the necessary inquiry. The minute order for the hearing indicates the final order was premised on the stipulation reached by the parties, that is, Munoz's agreement to stay away from Gonzalez and not to harass, attack or threaten her. But there is no indication in either the minute order or the transcript Munoz ever asserted he was the father of Flor and,

---

violence, where the court determines that the acts of domestic violence are of recent origin or are a part of a demonstrated and continuing pattern of acts of domestic violence."

[6] The issuance of this order indicates the court found a parent-child relationship between Gonzalez and Flor although the record on appeal does not disclose what evidence Gonzalez presented to establish this fact. As with any other threshold findings under the DVPA, the bench officer presiding at the proceeding should make every attempt to elicit the necessary factual support to ensure the safety of the petitioner and her family members. (See *Ross, supra,* 139 Cal.App.4th at p. 861.)

[7] When it added this language to section 6340, subdivision (a), in 2004, the Legislature also directed, "The Judicial Council shall provide notice of this provision on any Judicial Council forms related to this subdivision." (§ 6340, subd. (a); Stats. 2004, ch. 472, § 4.) The first page of Judicial Council Form DV-110, Temporary Restraining Order and Notice of Hearing, advises the petitioner that, at the hearing to determine whether to extend the temporary orders, the court "will consider whether denial of any orders will jeopardize your safety and the safety of children for whom you are requesting custody, visitation, and child support." Unlike other portions of this page, however, the required notice is provided only in English, not both English and Spanish.

indeed, in his answer to the order to show cause, he denied she was his child. At that juncture, there was no reason for the court to decline to enter the requested custody order or to refuse to name her as a person protected by the restraining order. Instead, however, the court embarked on an effort to instruct the parties that, in order to establish the parent-child relationship, they would need to commence a paternity action, advice that may have been precipitated by Gonzalez's earlier request for child support, but which was not relevant at all to the requested custody or stay-away orders.[8] While such advice may have been intended to assist the parties in navigating the complex family court system, it was an abuse of the court's discretion not to issue the permanent custody order requested by Gonzalez. **(4)** Court procedures, however well intentioned, should not be imposed at the expense of the parties' basic rights to have their matters fairly adjudicated: "That a procedure is efficient and moves cases through the system is admirable, but even more important is for the courts to provide fair and accessible justice." (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1366 [63 Cal.Rptr.3d 483, 163 P.3d 160] [invalidating local court rules that improperly interfered with statutory rights to present evidence at hearings in attempt to streamline proceedings].)

 While we hesitate to be overly critical of the efforts made by bench officers operating under heavy workloads and without the assistance of lawyers trained to assist in the formulation of their clients' needs, the Legislature has been particularly diligent in clearly specifying the court's responsibilities in administering the DVPA. Even more, in light of the vulnerability of the targeted population (largely unrepresented women and their minor children), bench officers are "necessarily expected to play a far more active role in developing the facts, before then making the decision whether or not to issue the requested permanent protective order." (*Ross, supra*, 139 Cal.App.4th at p. 861.) The paramount interest here, and in all similar cases, is "the safety" of all family members. (§ 6340.) Although a subsequent judicial proceeding rectified the failure to enter the necessary orders before Gonzalez's and Flor's safety was endangered, we recognize the high potential for less fortunate outcomes in other cases.

---

[8] Pursuant to section 6341, subdivision (a), the court in a DVPA proceeding may issue an order for child support only if the parties are married and no other child support order exists or the respondent is the presumed natural father of the child, as defined in section 7611, and the child is in the custody of the petitioner. Although section 6341, subdivision (b), provides a child support order issued in a DVPA proceeding is made without prejudice to any future paternity action, the filing of a paternity action is not, contrary to the trial court's statement, a prerequisite to a child support order.

## DISPOSITION

The portion of the trial court's order denying custody is reversed. However, because subsequent legal proceedings have rendered that part of the trial court's order moot, no further action need be taken in this matter by the trial court. Gonzalez is to recover her costs on appeal.

Woods, J., and Zelon, J., concurred.