Filed 2/29/24  Setele v. Setele CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| SERAIAH SETELE, | C098241 |
| Plaintiff and Appellant, | (Super. Ct. No. PFL20200060) |
| v. | |
| MICHAEL SETELE, | |
| Defendant and Respondent. | |

Petitioner Seraiah Setele requested a domestic violence restraining order against her husband, respondent Michael Setele.  After a hearing, the trial court denied the request.  On appeal, petitioner contends the trial court violated the Domestic Violence Prevention Act (Fam. Code,[1] § 6200 et seq.) (Act) by:  (1) applying the incorrect standard for considering abuse; (2) considering statements from their minor child's counsel;

---

[1]      Undesignated section references are to the Family Code.

1

(3) not providing a statement of decision; and (4) not providing petitioner additional assistance. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner filed for dissolution of her marriage to respondent in January 2020. Later that year, the parties signed a stipulation where petitioner agreed to dismiss a prior request for a domestic violence restraining order and the parties agreed to a custody arrangement for their minor child, among other terms. The agreement was to expire on September 15, 2022.

On August 31, 2022, petitioner filed another request for a domestic violence restraining order against respondent. The petition alleged respondent abused petitioner "at least 26 times a month" starting in January 2022 where respondent would disparage and harass her in front of their child when they would exchange him for visits in a sheriff's parking lot. Petitioner also attached transcripts she prepared of audio and video she recorded between her and respondent during these custody exchanges and other prior events, described the couple's history and her past allegations of respondent's abuse leading to the stipulation, and provided a declaration from the child's nanny stating respondent made her feel "uncomfortable during visitation exchanges." The petition also requested custody modifications.

On September 2 and 15, 2022, the trial court granted petitioner an ex parte temporary restraining order against respondent, modified visitation, and set a hearing for later that month.

Respondent filed a response before the hearing denying petitioner's accusations and alleging petitioner "has constantly lied to the court and abused and harassed [him]self and [their] son" and was only requesting the restraining order because she heard the child "say that he wanted to stay with his daddy."

At the hearing for the restraining order and visitation, where both parties appeared in propria persona, the trial court initially noted, "I've read everything you've submitted.

2

. . . I don't want to hear anything about what you already have in the paperwork . . . . Don't go into the complete history of the case. . . . I've gone through some of the history of the paperwork, although the amount of paperwork in this case is almost overwhelming that is in the file, so I haven't read everything, believe me." It also noted a child custody hearing would occur the following month so the visitation order would "only cover the time between [then] and the trial. It's only meant to cover whatever ha[d] occurred recently."

Petitioner then explained, "[T]he . . . child is disabled and is literally disrupted by these incidents of what I am told is called secondary trauma being exposed to the constant tax of those visitation exchanges and the stress it puts me through." The trial court asked whether she had anything further and clarified, "What I asked you to do was tell me anything that you think I need to know about this event, not past history, that you have not included in your declaration." Petitioner stated respondent had not had supervised visits as the court required in the ex parte order.

Respondent said he was not aware of the modified visitation order, communicates with petitioner only through text messages, meets her only in the sheriff's parking lot when they are exchanging the child, and added: "I just want to say to the [c]ourt I have not harassed her. I believe if these videos have been viewed, then this decision of supervised visits wouldn't have been made."

Petitioner then asked the trial court if she could play the videos she recorded. The trial court did not acknowledge the request and instead asked petitioner if she had anything else to add. Petitioner reiterated she didn't feel safe at the visitation exchanges. The court asked what about the exchanges made her feel unsafe and what might happen in the sheriff's parking lot. Petitioner started explaining how respondent drives slowly, takes videos of her, laughs, and his "behavior is odd." The court interrupted her and asked what harm she thinks will come to her. She explained, "He may have a gun. He's previously told me that if I spoke up, if I went to the police, if I tried to leave him, that I

3

don't want to know what he's going to do to me." The court asked when the last time was that he made such a threat and petitioner responded, "[B]efore I received the restraining order in August of 2020 and was able to move out."

The trial court then asked the child's counsel if she had any comments. The child's counsel responded, "A restraining order was not granted to [petitioner]. She's made allegations before. My concern is her responses to what seems to be very basic statements[;] I know I've said things that she's found to be abrasive or threatening. I think, you know, she's sensitive. Maybe we can do exchanges at a professional supervised location." But petitioner took issue with this suggestion based on cost and her past experience with an employee at the proposed facility.

After asking the parties whether they had anything else to add, the trial court stated: "I'm going to deny the request for [a] restraining order. I'm going to return visitation to the way it was before." The court explained: "You told me nothing, [petitioner], that would lead me to believe that [respondent]'s a danger to you or anybody else there, and supervised visits are dropped. . . . [¶] . . . [¶] [W]hat I'm finding is there's insufficient reason to grant the protective order as I don't see you are in any danger from your husband. He may - - I'm talking now. You and he may get into it when exchanging the child or you may get into it over the phone or through texts. You are obviously disagreeing about almost everything in your lives concerning you and your son, but so far I have heard nothing that I believe puts you in any danger of anything. That's the [c]ourt's finding. [¶] Secondly, I don't find anything at all that he's done that would cause any problem with your son, that's why I have made the order that I have made and allowed visitation."

Petitioner appeals.

4

DISCUSSION

I

*Domestic Violence Restraining Order Law*

The Act's purpose "is to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (§ 6220.) One way the Act accomplishes this purpose is to permit restraining orders "if an affidavit or testimony . . . shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse. The court may issue an order under this part based solely on the affidavit or testimony of the person requesting the restraining order." (§ 6300, subd. (a).) In considering any restraining order, "length of time since the most recent act of abuse is not, by itself, determinative. The court shall consider the totality of the circumstances in determining whether to grant or deny a petition for relief." (§ 6301, subd. (c).) And "the court shall consider whether failure to make any of these orders may jeopardize the safety of the petitioner and the children for whom the custody or visitation orders are sought." (§ 6340, subd. (a)(1).) The Act " 'should "be broadly construed in order to accomplish [its] purpose" of preventing acts of domestic violence.' " (*Vinson v. Kinsey* (2023) 93 Cal.App.5th 1166, 1175.)

Petitioner contends the trial court committed several errors in denying her request for a restraining order under the Act.[2] Petitioner is not challenging the factual basis for the trial court's finding, but specific legal issues in making that finding. We consequently review each of these legal issues de novo. (See *J.H. v. G.H.* (2021) 63 Cal.App.5th 633, 643 [conducting a de novo review for a legal challenge to a denial of a domestic violence restraining order].)

---

**2**     Respondent did not file a brief.

## II

*The Trial Court Did Not Apply The Wrong*

*Standard In Denying The Restraining Order*

Petitioner first contends the trial court applied the incorrect standard in denying her request by focusing on recent abuse.  She also contends, "[T]he trial court erred by requiring [her] to identify a threat of physical danger without recognizing the harassment itself constituted abuse the [Act] aims to prevent."  (Italics omitted.)  We disagree.

The Act defines "abuse" as any of the following:  "(1) To intentionally or recklessly cause or attempt to cause bodily injury"; "(2) [s]exual assault"; "(3) [t]o place a person in reasonable apprehension of imminent serious bodily injury to that person or to another"; or "(4) [t]o engage in any behavior that has been or could be enjoined pursuant to [s]ection 6320."  (Fam. Code, § 6203.)  Under Family Code section 6320, "[t]he court may issue an ex parte order enjoining a party from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, credibly impersonating as described in [s]ection 528.5 of the Penal Code, falsely personating as described in [s]ection 529 of the Penal Code, harassing, telephoning, including, but not limited to, making annoying telephone calls as described in [s]ection 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party."  (Fam. Code, § 6320, subd. (a).)  The Act requires petitioners to show " 'past abuse by a preponderance of the evidence.' "  (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 116.)

The trial court did not base its finding exclusively on the recency of abuse, nor did it require a threat of physical harm.  The trial court instead, after reviewing all materials petitioner submitted and her testimony in court, found respondent posed no danger to petitioner or their child *and* found petitioner's alleged acts of harassment were insufficient to justify a restraining order because they amounted to the parties "get[ting]

6

into it when exchanging the child" and "disagreeing about almost everything in [their] lives."

The trial court asked petitioner to focus on recent examples of offending behavior to narrow her testimony to information the court had not already considered. The trial court was necessarily aware of petitioner's prior allegations because it confirmed it read the petition and its supporting documentation, which included a detailed history of the past abuse allegations. The court's efforts to focus petitioner's testimony on new, recent information was thus not "determinative," as petitioner contends, but part of the totality of the circumstances considered by the court in evaluating petitioner's petition. (§ 6301, subd. (c).) And the court was required to consider the safety of petitioner and the child, but found their safety was not at risk. (§ 6340, subd. (a)(1).) As a result, we conclude the trial court did not commit legal error in the standard it applied.

### III

### *The Trial Court Did Not Err In Considering*
### *The Child's Counsel's Statements*

Petitioner next contends the trial court erred in permitting the child's counsel to make statements about the abuse allegations. Petitioner asserts the Act is silent on this specific type of testimony, and "[i]f the Legislature had intended minor's counsel to participate in [restraining order] proceedings or [express an opinion] on [an Act] petitioner's allegations of abuse, it would have said as much." We disagree.

The Act permits a restraining order "if an affidavit or testimony" (§ 6300, subd. (a)) establishes abuse under the totality of the circumstances (§ 6301, subd. (c)). The Act does not restrict the sources of these affidavits or testimony because a party to a domestic violence restraining order request "should be afforded the opportunity to present written evidence (if he[, she, or they] serves it timely on [the other party]) as well as oral testimony from himself[, herself, or themselves] and *other witnesses*." (*Ross v. Figueroa* (2006) 139 Cal.App.4th 856, 868 (*Ross*), italics added.) We will not read in restrictions

7

absent from the statutory text. (Cf. *In re Marriage of Davila and Mejia* (2018) 29 Cal.App.5th 220, 227 ["Mejia does not cite any authority for his contention that testimony at the [domestic violence restraining order] hearing is limited to the specific allegations in the party's application"].)

Trial courts are therefore given meaningful discretion to obtain relevant evidence, including limited statements from other witnesses. The perspective of an independent third party who has firsthand experience with both parties is relevant. This is true for the child's counsel just as it was for the nanny who submitted a declaration in support of the petition. We thus conclude the trial court did not err in considering the statements from child's counsel.

IV

*The Trial Court Did Not Err In Not Providing A Statement Of Decision*

In petitioner's request for a restraining order and three times at the hearing, petitioner requested "a statement of decision pursuant to Civil Code of Procedure [section] 632." After the third request, the trial court responded in the hearing: "Ma'am, that's the third time you told me that." Petitioner contends the court erred in not providing a statement of decision under Code of Civil Procedure section 632.

The Act addresses court reasoning in section 6340, which states, in part: "The court shall, upon denying a petition under this part, provide a brief statement of the reasons for the decision in writing or on the record. A decision stating 'denied' is insufficient." (§ 6340, subd. (b).) Petitioner acknowledges this provision but contends, "[T]he limitations of this requirement show that it does not negate the importance of providing a statement of decision here or in [the Act's] proceedings more generally." We disagree.

Code of Civil Procedure section 632 states, in pertinent part: "In superior courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. The court shall issue a statement of decision explaining the

8

factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial. . . . [¶] The statement of decision shall be in writing, unless the parties appearing at trial agree otherwise; however, when the trial is concluded within one calendar day or in less than 8 hours over more than one day, the statement of decision may be made orally on the record in the presence of the parties." In general, this section " 'applies when there has been a trial followed by a judgment. [Citation.] . . .' [Citations.] But '[e]xceptions to the general rule have been created for special proceedings. [Citations.] In determining whether an exception should be created, the courts balance " '(1) the importance of the issues at stake in the proceeding, including the significance of the rights affected and the magnitude of the potential adverse effect on those rights; and (2) whether appellate review can be effectively accomplished even in the absence of express findings.' " ' " (*City and County of San Francisco v. H.H.* (2022) 76 Cal.App.5th 531, 544-545.)

Petitioner does not present a meaningful difference between the relief sought and the relief obtained. Petitioner argues the proceedings constituted a special proceeding, and her request obligated the trial court to follow Code of Civil Procedure section 632. Even if we assume this was a special proceeding, the trial court here articulated on the record the factual and legal basis for its decision as required by that provision. This specifically addressed, as discussed above, the controverted issue of whether respondent's behavior constituted abuse justifying a restraining order under the Act. And because the hearing was within one day, Code of Civil Procedure section 632 would not require the statement to be written.

The cases petitioner cites do not support a different result. The two main cases she relies on, *City and County of San Francisco v. H.H.*, *supra*, 76 Cal.App.5th 531 and *Nakamura v. Parker* (2007) 156 Cal.App.4th 327, involved trial courts not issuing *any statement* regarding the factual and legal basis for the decision. (*H.H.*, at p. 546 ["the only explanation the trial court provided, other than a conclusory statement that it was in

9

the child's best interests, was that 'this is the schedule that the child has had for a number of years now' "]; *Nakamura*, at p. 333 ["The court denied the request on August 7, giving no explanation"].)  Unlike these cases, the trial court here provided orally on the record the factual and legal basis for denying petitioner's request for a restraining order.  This satisfied the requirements of Family Code section 6340, which, in this circumstance, also sufficiently addressed the requirements of Code of Civil Procedure section 632.  We thus find no error.

V

*The Trial Court Did Not Err In Not Providing*

*Petitioner Any Additional Assistance*

Petitioner finally contends the trial court erred in not providing her, as a self-represented litigant in a proceeding under the Act, more assistance in developing the facts for her request.  There are again no explicit statutory provisions detailing the level of assistance a trial court must provide self-represented litigants in a proceeding under the Act, and petitioner does not cite to any.  Instead, petitioner relies on the procedural observations articulated in *Ross*, *supra*, 139 Cal.App.4th 856.

In *Ross*, the trial court granted a permanent restraining order without granting the respondent's request for a continuance or permitting him to present any evidence.  (*Ross*, *supra*, 139 Cal.App.4th at pp. 860-861.)  The appellate court in *Ross* made numerous observations about the domestic violence restraining order process and the typical involvement of in propria persona litigants.  (*Id*. at p. 861.)  Other cases have cited *Ross*'s observations to support finding due process shortcomings in domestic violence restraining order hearings.  (See, e.g., *Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 423; *In re Marriage of D.S. and A.S.* (2023) 87 Cal.App.5th 926, 935.)  Petitioner relies on *Ross* and these other cases to argue the trial court here failed to render the "requisite guidance" to her at the hearing.

10

In support of her claim, however, petitioner focuses too narrowly on the observations in *Ross* while ignoring its actual legal finding. The appellate court in *Ross* found the trial court erred in not granting the respondent a continuance, reversed, and remanded for a new hearing. (*Ross*, *supra*, 139 Cal.App.4th at pp. 864-865, 869.) The appellate court "not[ed] some due process and procedural problems that should be avoided in future proceedings," notably, the trial court precluded the respondent from presenting *any* evidence in support of his position. (*Id*. at p. 865, capitalization omitted.)

In this way, *Ross* is dissimilar from the present case. Here, the trial court inquired into the specific reasoning and support for the request for a restraining order and then asked three times whether petitioner had anything else to support the request before making a ruling. Though it appears the trial court did not consider the videos, petitioner included transcripts of the videos as supporting documentation for her petition and the trial court said on the record it had considered all of petitioner's supporting documentation. We find no reason to require the trial court to have considered all the videos in addition to the transcripts and consequently conclude the trial court did not err in not providing petitioner any further assistance with her request for a restraining order.

## DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


                                      /s/\
                                      ROBIE, J.


We concur:


/s/\
EARL, P. J.


/s/\
MESIWALA, J.