Filed 1/6/15  Marriage of Gross CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of TIMOTHY and ELENA GROSS. | |
| TIMOTHY GROSS,<br><br>        Respondent,<br><br>v.<br><br>ELENA GROSS,<br><br>        Appellant. | E054567, E056091, E058446<br><br>(Super.Ct.No. IND098669)<br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT

The petition for rehearing filed on December 12, 2014, is denied.  On the court's own motion, the opinion filed in this matter on December 10, 2014, is modified as follows:

Replace the final paragraph on page 14 to and including the first full paragraph on page 16 in their entirety.  The paragraph on page 14 begins with "Elena does not

1

explicitly frame her argument . . ." and the first full paragraph on page 16 ends with ". . . the alleged threats did not amount to domestic violence."

The new paragraphs on pages 14-16 should read as follows:

Elena does not explicitly frame her argument with respect to the standard of review. She appears to contend that her allegations and the evidence she attached to her request compelled issuance of the restraining order as a matter of law. At oral argument, she asserted that the proper standard of review is de novo. She is correct in part. A grant or denial of a DVPA protective order is reviewed for abuse of discretion. (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420; Fam. Code, § 6300 [domestic violence restraining order may be issued "if an affidavit shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse."])[13] There are two aspects to abuse of discretion, however. "'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citation.] At the outset, however, we must determine whether

---

[13] Elena refers to abuse of discretion only in connection with her contention that the trial court abused its discretion in refusing to consider past incidents of abuse that formed the basis of her request for a restraining order which was adjudicated on November 29, 2011. The court referred to those incidents as res judicata.

On appeal, we presume that a challenged ruling is correct. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610.) It is the appellant's burden to provide a record which affirmatively demonstrates error. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574-575.) The proceedings on the request adjudicated on November 29, 2011, are not included in the record on appeal. Accordingly, we presume that the alleged instances of abuse were determined in the prior proceeding not to constitute abuse within the meaning of the DVPA and that the court properly refused to consider them for purposes of the current request.

the trial court applied the correct legal standard to the issue in exercising its discretion, which is a question of law for this court. 'The scope of discretion always resides in the particular law being applied; action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an abuse of discretion.'" (*Gonzalez v. Munoz*, at pp. 420-421.) Accordingly, to the extent that Elena implies, or appears to do so, that the trial court applied an incorrect legal standard, she is correct that our review is de novo. We see no support for Elena's implied assertion that the trial court applied an incorrect legal standard, however.

The trial court held first that the statements Elena interpreted as death threats do not amount to threats under the DVPA. Although under some circumstances a wish for someone's death could no doubt be a veiled death threat, the record supports the conclusion that Timothy's wishes that Elena would jump in front of a truck or otherwise die do not amount to threats which are subject to the DVPA. To be enjoinable under the DVPA, a threat must be sufficient to place the petitioner in "reasonable apprehension of imminent serious bodily injury." (Fam. Code, § 6203, subd. (c); see *S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264.) This is a question of fact. Elena stated in her declaration in support of her request that Timothy's "threats" caused her to fear for her life, but she did not offer any facts which would support the conclusion that his expressed wishes were in fact death threats sufficient to place her in reasonable apprehension of *imminent* serious bodily injury. Because the court's conclusion is supported by the evidence, it was not an abuse of discretion to deny the request for a restraining order on that ground.

3

The court also held that Timothy's use of vile and abusive language in emails and telephone conversations does not amount to abuse within the meaning of the DVPA. Its comment in that context, that it lacked the ability to make the parties "be nice" to each other, is troubling, but only superficially. Conduct which seriously disturbs the recipient's peace of mind is enjoinable abuse under the DVPA. (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1498.) Verbal abuse may, under some circumstances, have that effect and therefore be subject to a domestic violence protective order. "The scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .'" (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.) Accordingly, if the court denied the request out of a mistaken belief that it had no authority to enjoin Timothy's verbal abuse, that would be an abuse of discretion. However, based on the record before us, we cannot conclude that the trial court did not believe that verbal abuse can be enjoined under the DVPA under any circumstances.

These modifications do not change the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____
                                    J.

We concur:

RAMIREZ _____
                P. J.

KING _____
                J.

4

Filed 12/10/14  Marriage of Gross CA4/2 (unmodified version)

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of TIMOTHY and ELENA GROSS. | |
| TIMOTHY GROSS, | |
| Respondent, | E054567, E056091, E058446 |
| v. | (Super.Ct.No. IND098669) |
| ELENA GROSS, | OPINION |
| Appellant. | |

APPEAL from the Superior Court of Riverside County.  Dale R. Wells, Judge.

Affirmed.

Elena Gross, in pro. per., for Appellant.

No appearance for Respondent.

1

Elena Gross appeals from various orders entered in the course of proceedings in

the dissolution of her marriage to Timothy Gross, concerning custody and visitation of

the couple's two minor sons.  In a previous appeal, we affirmed the trial court's order

declaring Elena[2] a vexatious litigant pursuant to Code of Civil Procedure section 391,

subdivision (b)(3).[3]  (*In re Marriage of Gross*, Dec. 20, 2011, E051037 [nonpub. opn.].)

Pursuant to section 391.7, subdivision (a), this court has required Elena to obtain

---

[2]  As is customary in family law appeals, we will refer to the parties by their first names, solely for the sake of convenience and clarity.  No disrespect is intended.

[3]  All further statutory citations refer to the Code of Civil Procedure unless another code is specified.

permission to file appeals and petitions in this court.[4]  In the three consolidated appeals we address here, we granted her permission to appeal from the following orders:

Case No. E054567

1.  The denial of Elena's statutory motion to vacate the judgment rendered on August 5, 2011; and

---

[4]  In *John v. Superior Court* (2014) ___ Cal.App.4th ___ [2014 Cal.App. Lexis 1018, 179 Cal.Rptr.3d 856], a case brought to our attention by Elena at oral argument, the court held that the vexatious litigant statute does not apply where the litigant is appealing from a judgment in a matter in which he or she was the defendant.  The court held that the purpose of the statute is to protect parties who are sued by vexatious litigants and to conserve judicial resources.  It held that this purpose is not furthered by limiting the access of a defendant to an appeal from adverse judgment in a case which was not initiated by that party.  (179 Cal.Rptr.3d at pp. 864-867.)

Elena contends that the same reasoning applies because she is the respondent in the dissolution proceedings.  However, the vexatious litigant law (§§ 391-391.7) applies not only to a party who has initiated an excessive number of unmeritorious lawsuits, but also to a party who, while acting in propria persona in any litigation, "repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay." (§ 391, subd. (b)(3).)  For purposes of section 391.7, which authorizes a "prefiling order" requiring the vexatious litigant to obtain permission to file further litigation, "litigation" includes not only any civil action or proceeding (§ 391, subd. (a)) but also "any petition, application, or motion other than a discovery motion, in a proceeding under the Family Code or Probate Code, for any order."  (§ 391.7, subd. (d).)

In a prior appeal arising from this dissolution case, we affirmed the trial court's finding that Elena is a vexatious litigant based on her having filed three petitions and one amended petition for restraining orders between October 2009 and February 2010; nine motions involving modification of child custody orders, some of them within days after the denial of the previous motion, between November 2009 and June 2010; and four motions to disqualify the commissioner to whom the case was assigned, between November 2009 and April 2010.  All of these petitions and motions were denied.  (*In re Marriage of Gross*, *supra*, E051037.)

Similarly, Elena has filed approximately 48 appeals and writ petitions in this court, as of the date of this opinion.  Most relate to the dissolution, and although she has had some limited success, the vast majority of her contentions have been unmeritorious.  Accordingly, she continues to fall within the definition of a vexatious litigant.

3

2.  The temporary postjudgment modification of custody and visitation orders rendered on August 5, 2011.**5**

Case No. E056091

The order dated June 7, 2012, denying Elena's request for a permanent domestic violence restraining order.

Case No. E058446

The order dated March 22, 2013, denying Elena's request for a permanent domestic violence restraining order.

We will affirm all four orders.

## CASE NO. E054567

## FACTUAL AND PROCEDURAL HISTORY

Timothy and Elena were married in 2001.  As of the date of the custody trial which is the subject of case No. E054567, their two children were eight and four years old, respectively.  Timothy and Elena separated in 2009, and Timothy filed a petition for dissolution of the marriage on October 6, 2009.  Elena was originally awarded sole legal and physical custody of the children, but a subsequent temporary order entered on December 1, 2009, awarded joint legal and physical custody to Timothy.  This order was in effect at the time of the custody trial held May 2 through May 5, 2011.

---

**5**  We denied Elena's request to address orders made on September 9, 2011, because we determined that Elena was not aggrieved by those orders.  In addition, we note, Elena's notice of appeal in case No. E054567 is taken solely from the orders made on August 5, 2011.  Issues pertaining to subsequent orders are not cognizable based on that notice of appeal.

4

On May 5, 2011, the trial court issued its tentative decision, as requested by Elena. Elena filed objections to the tentative decision, and on May 23, 2011, the court issued a modified tentative decision. Elena filed objections to the modified tentative decision. On June 13, 2011, the court filed its final ruling and statement of decision. Elena first filed an objection to the June 13, 2011 statement of decision and then filed a motion to set aside the statement of decision and for a new trial.

On August 5, 2011, the court denied the motion. It then, on its own motion, issued an order to show cause (OSC) to determine whether there was a risk that Elena would abduct the children. The court set a hearing for August 26, 2011.

On September 19, 2011, Elena filed a notice of appeal limited to the orders entered on August 5, 2011.

LEGAL ANALYSIS

1.

ELENA HAS NOT SHOWN THAT THE TRIAL COURT IMPROPERLY DENIED

HER MOTION TO VACATE THE JUDGMENT

Elena appeals from the denial of her motion, entitled "Motion to Set Aside Statement of Decision" and "Motion for New Trial." We deemed it to be a motion to vacate the judgment pursuant to section 663, and the order denying it therefore appealable.[6]

Section 663 provides in pertinent part: "A judgment or decree, when based upon a decision by the court, or the special verdict of a jury, may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for either of the following causes, materially affecting the substantial rights of the party and entitling the party to a different judgment: [¶] 1. *Incorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts*; and in such case when the judgment is set aside, the statement of decision shall be amended and corrected." (§ 663, subd. 1, italics added.)

_____

[6] An order denying a motion to vacate the judgment pursuant to section 663 is appealable as an order after judgment; an order denying a motion for a new trial is not. (*Hollister Convalescent Hosp*., *Inc. v. Rico* (1975) 15 Cal.3d 660, 663-664; *Norager v. Nakamura* (1996) 42 Cal.App.4th 1817, 1819, fn. 1; § 904.1, subd. (a)(2).) The grounds for the new trial motion may be addressed in an appeal from the underlying judgment. (*People v. Ault* (2004) 33 Cal.4th 1250, 1261.) Here, Elena did not appeal from the judgment.

As the statutory language indicates, a motion to vacate lies only where "the trial judge draws an incorrect legal conclusion or renders an erroneous judgment upon the facts found by it to exist" (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 738) or renders an erroneous judgment on the basis of uncontroverted evidence (*Simac Design, Inc. v. Alciati* (1979) 92 Cal.App.3d 146, 153).

Here, despite our order stating that we deemed Elena's motion to have been brought pursuant to section 663, her brief does not discuss the requirements of section 663 and does not develop any argument that the court's ruling was erroneous based on the facts the court found. Instead, she argues that the facts on which the court based its decision "were not properly in evidence," that "material evidence was withheld from the court," that there was "insufficient evidence to justify the statement of decision," that there was "irregularity in the trial court proceedings" and "lack of fair trial" in that the court "failed to admit evidence, disregarded crucial testimony and removed material evidence from the trial and additionally interposed objections on behalf of [Timothy] and struck relevant material testimony [based on] its own objections on behalf of [Timothy]." In effect, her argument is nothing more than an attempt to reargue the case she presented at the custody hearing. Accordingly, we decline to address it.[7]

---

[7] Elena also makes other arguments which are outside the limited scope of the issues cognizable in an appeal from the denial of a motion to vacate pursuant to section 663. We disregard these arguments as well.

## 2.

## THE COURT PROPERLY ISSUED AN OSC ON THE ISSUE OF THE POSSIBLE ABDUCTION OF THE CHILDREN

In its judgment, entered on June 13, 2011, the court ordered Elena to deliver any and all passports for the children to Timothy on or before July 1, 2011. Evidence at the custody hearing established that Elena, a permanent resident but not a citizen of the United States, held dual South African and German citizenship. Her mother resided in South Africa. Timothy and Elena had obtained passports for the children before they separated, but those passports were stolen when the safe in which Timothy kept them, which belonged to a friend of his, was stolen from the friend's home. Elena had obtained replacement passports for the children, and Timothy was concerned that Elena would use the passports to remove the children from the country and take them to South Africa.

As of the August 5, 2011 hearing on Elena's motion to set aside the statement of decision and for a new trial, Elena had not delivered the passports to Timothy. Elena had previously told the court that she had sent the passports to her mother for safekeeping and had submitted a declaration by her mother stating that the passports "no longer exist." The declaration did not explain what had happened to the passports. Elena said that her mother had destroyed them. The court was not satisfied with that explanation. It became concerned that Elena was a flight risk, in part because she was unemployed and was facing a hearing on eviction from the former family home, which was in foreclosure, and in part because of what the court perceived to be Elena's evasiveness concerning the status of the children's passports. The court issued an OSC "regarding custody,

8

visitation, and sanctions under Code of Civil Procedure 177.5" based upon Elena's failure to comply with the order to provide the passports to Timothy despite twice being ordered to do so. The court set a hearing on the OSC for August 26, 2011. Because the court believed there was a risk that Elena would abduct the children, the court gave temporary physical custody to Timothy pending the hearing, subject to Elena's rights to reasonable visitation, but only under supervision at Elena's expense.

On appeal, Elena argues that the court "abused its discretion by issuing non noticed ex parte orders without any credible evidence and issuing [*sic*] children as punitive sanctions without notice." As to the latter contention, we understand it to mean that the court in effect imposed sanctions on her without a hearing because it denied her visitation pending the hearing.[8]

Contrary to Elena's arguments, the court did not issue any ex parte orders without notice. Elena was present when the court issued the OSC. The courtroom deputy personally served her in the courtroom with the notice of the hearing, which described the issues to be addressed and stated the date, time and place of the hearing.[9] And, as we

---

[8] Elena makes other contentions as well, concerning the ultimate ruling on the order to show cause. However, as we have noted elsewhere, issues arising after August 5, 2011, are not cognizable in this appeal and we disregard any arguments which are based on anything which occurred after the August 5, 2011, hearing.

[9] At oral argument, Elena pointed out that the minutes state that the court issued an ex parte order to show cause. The minutes do so state, and the trial court did state orally that it was setting an ex parte hearing. However, as noted, the order was not issued in Elena's absence, and she was given notice of the date, time and place of the hearing on the OSC by personal service of the OSC. Accordingly, there was no ex parte order issued by the court.

9

discuss below, the temporary order limiting her visitation pending the hearing on the OSC was not an abuse of discretion.

Family Code section 3048, subdivision (b)(1), provides that when a court becomes aware of facts which may indicate that there is a risk of abduction of a child, the court shall determine whether measures are needed to prevent the abduction of the child by one parent. To determine whether there is such a risk, the court must consider specified factors, which we have set out below.[10] Elena argues that the court failed to consider

---

[10] "In cases in which the court becomes aware of facts which may indicate that there is a risk of abduction of a child, the court shall, either on its own motion or at the request of a party, determine whether measures are needed to prevent the abduction of the child by one parent. To make that determination, the court shall consider the risk of abduction of the child, obstacles to location, recovery, and return if the child is abducted, and potential harm to the child if he or she is abducted. To determine whether there is a risk of abduction, the court shall consider the following factors: [¶] (A) Whether a party has previously taken, enticed away, kept, withheld, or concealed a child in violation of the right of custody or of visitation of a person. [¶] (B) Whether a party has previously threatened to take, entice away, keep, withhold, or conceal a child in violation of the right of custody or of visitation of a person. [¶] (C) Whether a party lacks strong ties to this state. [¶] (D) Whether a party has strong familial, emotional, or cultural ties to another state or country, including foreign citizenship. This factor shall be considered only if evidence exists in support of another factor specified in this section. [¶] (E) Whether a party has no financial reason to stay in this state, including whether the party is unemployed, is able to work anywhere, or is financially independent. [¶] (F) Whether a party has engaged in planning activities that would facilitate the removal of a child from the state, including quitting a job, selling his or her primary residence, terminating a lease, closing a bank account, liquidating other assets, hiding or destroying documents, applying for a passport, applying to obtain a birth certificate or school or medical records, or purchasing airplane or other travel tickets, with consideration given to whether a party is carrying out a safety plan to flee from domestic violence. [¶] (G) Whether a party has a history of a lack of parental cooperation or child abuse, or there is substantiated evidence that a party has perpetrated domestic violence. [¶] (H) Whether a party has a criminal record." (Fam. Code, § 3048, subd. (b)(1).)

10

those factors, or that there is insufficient evidence to support a finding of risk of abduction.

The issue here, however, is not the propriety of any ultimate finding that the children were at risk of being abducted. That determination was not made as of August 5, 2011, and if the court did so determine at a future hearing, that order is not before us.[11] The issue here is whether the court was aware of facts sufficient to trigger its duty to determine the existence of a risk of abduction. We uphold the court's factual finding if it is supported by evidence which is reasonable, credible and of solid value as proof of the factual issue in question. (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.) Substantial evidence supports the conclusion that there was a risk of abduction. Elena has strong familial ties to South Africa, where her family resides, and she is a citizen of South Africa. (Fam. Code, § 3048, subd.(b)(1)(D).) When the court issued the OSC, Elena was unemployed and was engaged in litigation directed at evicting her from the family home, which was in foreclosure. (Fam. Code, § 3048, subd. (b)(1)(E).) Elena's claimed act of sending the children's passports to her mother in South Africa could be viewed as planning activity, particularly in conjunction with the seemingly evasive answers she and her mother provided concerning the passports. (Fam. Code, § 3048, subd. (b)(1)(F).) While none of this evidence is dispositive, it is sufficient

---

**11** At oral argument, Elena persisted in arguing the merits of the abduction issue. We repeat, the merits of the court's ultimate ruling are not before us. We address only the propriety of the issuance of the OSC.

11

to trigger the court's duty to determine whether there was in fact a risk of abduction. Accordingly, the court appropriately issued an OSC to make that determination.[12]

Elena also complains that the court improperly applied sanctions in the form of denying her visitation. Because the court had sufficient reason to consider the risk of abduction, however, it was not an abuse of discretion to require monitored visitation until the court could determine whether there actually was a risk that Elena would remove the children from the country.

<u>CASE NO. E056091</u>

FACTUAL AND PROCEDURAL HISTORY

The sole order cognizable in this appeal is the order dated June 7, 2012, denying Elena's request for a domestic violence restraining order.

On May 17, 2012, Elena filed a request for a domestic violence restraining order. In it, she alleged ongoing and continuous verbal abuse of Elena by Timothy in front of the children, abusive and harassing emails and "ongoing public threats" by Timothy against Elena. Timothy denied the allegations.

A hearing was held on June 7, 2012. The court denied the request, and on June 12, 2012, Elena filed a notice of appeal.

---

[12] In a postbriefing submission of new authority pursuant to California Rules of Court, rule 8.254, Elena cites us to *J.M. v. G.H.* (2014) 228 Cal.App.4th 925. That case is inapposite. Its only holding pertinent to the issue of possible abduction is that no findings pursuant to Family Code section 3048 were required because there was no finding that the mother might abduct the child. (*J.M. v. G.H.*, at pp. 932-933.)

<u>LEGAL ANALYSIS</u>

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DENYING THE

REQUEST FOR A RESTRAINING ORDER[13]

Pursuant to the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.), a court may issue a protective order to restrain any person for the purpose of preventing a recurrence of domestic violence.  (Fam. Code, §§ 6220, 6300.)  Specifically, Family Code section 6300 provides, "An order may be issued under this part, with or without notice, to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved, if an affidavit or, if necessary, an affidavit and any additional information provided to the court pursuant to Section 6306, shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse."

The DVPA defines domestic violence as abuse perpetrated against enumerated individuals, including a former spouse or cohabitant.  (Fam. Code, § 6211, subds. (a), (b).)  "'[A]buse' means any of the following:  [¶]  (a)  Intentionally or recklessly to cause or attempt to cause bodily injury[;]  [¶]  (b)  Sexual assault[;]  [¶]  (c)  To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another[;]  [¶]  (d)  To engage in any behavior that has been or could be enjoined pursuant to Section 6320."  (Fam. Code, § 6203.)  The behaviors outlined in Family Code section

---

[13]  Despite our order limiting the issues on appeal to the order denying her request for a domestic violence restraining order on June 7, 2012, Elena's brief includes a number of arguments pertaining to other orders.  We will disregard them.

6320 include "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household members."

Elena contends that the restraining order should have been issued because her request describes abusive conduct by Timothy which "substantially disturbs her peace of mind and threatens her emotional and mental calm." This includes abusive comments during telephone calls, abusive emails and what Elena sees as death threats, such as Timothy's repeated comments to the effect that if Elena had any dignity, she would jump in front of a moving truck and, presumably, die.

Elena does not explicitly frame her argument with respect to the standard of review. She appears to contend that her allegations and the evidence she attached to her request compelled issuance of the restraining order as a matter of law. At oral argument, she asserted that the proper standard of review is de novo. However, a grant or denial of a DVPA protective order is reviewed for abuse of discretion. (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420; Fam. Code, § 6300 [domestic violence restraining order may be issued "if an affidavit shows, to the satisfaction of the court, reasonable proof of a past

act or acts of abuse.")**14**  There are two aspects to abuse of discretion. "'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citation.] At the outset, however, we must determine whether the trial court applied the correct legal standard to the issue in exercising its discretion, which is a question of law for this court. 'The scope of discretion always resides in the particular law being applied; action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an abuse of discretion.'" (*Gonzalez v. Munoz*, at pp. 420-421.)

Here, the trial court appears to have accepted Elena's factual assertions but concluded that even if her assertions were true, they did not amount to domestic violence as a matter of law. The trial court held first that the statements Elena interpreted as death threats simply do not amount to threats; second, it held that because the DVPA does not give the court the authority to make the parties be nice to each other, Timothy's use of

---

**14** Elena refers to abuse of discretion only in connection with her contention that the trial court abused its discretion in refusing to consider past incidents of abuse that formed the basis of her request for a restraining order which was adjudicated on November 29, 2011. The court referred to those incidents as res judicata.

On appeal, we presume that a challenged ruling is correct. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610.) It is the appellant's burden to provide a record which affirmatively demonstrates error. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574-575.) The proceedings on the request adjudicated on November 29, 2011, are not a part of the record on appeal. Accordingly, we presume that the alleged instances of abuse were determined in the prior proceeding not to constitute abuse within the meaning of the DVPA and that the court properly refused to consider them for purposes of the current request.

15

vile and abusive language in emails and telephone conversations does not amount to abuse within the meaning of the DVPA.

Although under some circumstances a wish for someone's death could no doubt be a veiled death threat, it was not an abuse of discretion for the trial court to conclude that the wishes Timothy expressed that Elena would jump in front of a truck or otherwise die do not amount to death threats. To be enjoinable under the DVPA, a threat must be sufficient to place the petitioner in "reasonable apprehension of imminent serious bodily injury." (Fam. Code, § 6203, subd. (c); see *S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264.) Elena stated in her declaration in support of her request that Timothy's "threats" caused her to fear for her life, but she did not offer any facts which would support the conclusion that his expressed wishes were in fact death threats sufficient to place her in reasonable apprehension of *imminent* serious bodily injury. Accordingly, the trial court did not abuse its discretion by finding that the alleged threats did not amount to domestic violence.

The court's comment that it lacked the ability to make the parties "be nice" to each other is more troubling, but only superficially. Conduct which seriously disturbs the recipient's peace of mind is enjoinable abuse under the DVPA. (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1498.) Verbal abuse may, under some circumstances, have that effect and therefore be subject to a domestic violence protective order. "The scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .'" (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.) Accordingly, if the court denied the request

16

out of a mistaken belief that it had no authority to enjoin Timothy's verbal abuse, that would be an abuse of discretion. However, based on the record before us, we cannot conclude that the trial court did not believe that verbal abuse can be enjoined under the DVPA under any circumstances. Rather, we understand the court's comment to mean that it did not believe that Timothy's insults in particular rose to the level of enjoinable abuse under the DVPA. We review this finding for abuse of discretion under the "bounds of reason" analysis. (*Gonzalez v. Munoz*, *supra*, 156 Cal.App.4th at p. 420.) Under that standard of review, when two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court. (*Ibid*.)

We note that Elena did not allege that Timothy's verbal abuse substantially disturbed her peace of mind and threatened her emotional and mental calm, as she now contends. Rather, she described his abusive language, in conjunction with what she interpreted as death threats, as escalating conduct which she interpreted as a threat to her *physical* well-being and that of the children. (She sought the restraining order on behalf of the children as well as herself.) The orders she sought are consistent with her belief that Timothy posed a physical threat to her and the children: an order for Timothy to stay at least 100 yards from her, her vehicle, the children and the children's school or child care; a changed child custody order; an order for Timothy not to possess a firearm; and an order for Timothy to attend a 52-week batterer intervention program and to attend anger management and parenting classes. Although she also asked for personal conduct orders in the generic language of Family Code section 6320, subdivision (a) (enjoining

17

"molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, . . . destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace"), the clear gist of the request is that Timothy's verbal abuse is part of a pattern of behavior which amounts to death threats. Elena reiterated this position at the hearing, and she said nothing about Timothy's insults disturbing her peace of mind, apart from her belief that Timothy's conduct was escalating and now amounted to death threats.

Apart from the purported death threats, the parties' complaints about each other—Timothy says vile things to and about Elena, Elena calls and emails constantly—are unchanged from the complaints they voiced at the custody hearing a year earlier, and they were apparently the same complaints raised in unsuccessful requests for restraining orders in the interim. The custody hearing and the hearing on the current request for a restraining order were held before the same judge. Accordingly, the court was aware that this was a well-established pattern in the parties' relationship, and despite Elena's argument, there was no evidence that it had in fact escalated. Moreover, the court observed the parties' demeanor both during the hearing on the petition and at greater length during the custody hearing, which lasted five days. The court may have concluded, based on its observations, that there was no evidence that Timothy's insults, no matter how vile, were seriously disturbing to Elena's peace of mind. This is a factual determination which requires deferential appellate review. (See *Escobar v. Flores* (2010)

18

183 Cal.App.4th 737, 748-749.)[15] We cannot say that it is outside the bounds of reason to conclude, based on the trial court's observations, that Elena failed to meet her burden of proving that Timothy's insults seriously disturbed her peace of mind. Accordingly, we cannot say that it was an abuse of discretion to deny the request for a restraining order.[16]

---

[15] "[W]e have nothing but the cold, unadorned words on the pages of the reporter's transcript. The trial court, on the other hand, had the living, breathing [witness] before it. Thus, the trial court had the ability to judge [the witness]'s maturity not only by what he said, but by how he said it, and how he presented himself when he said it—in other words, by '"the nuance, demeanor, body language, expression and gestures"' [citation] that we, as an appellate court, are denied." (*Escobar v. Flores*, *supra*, 183 Cal.App.4th at p. 749.)

[16] In a postbriefing submission of new authority, pursuant to California Rules of Court, rule 8.254, Elena cites *Gou v. Xiao* (2014) 228 Cal.App.4th 812. She appears to contend, based on that case, that her DVPA petition should have been granted because it was facially adequate. However, the issue in that case is the trial court's summary denial of a facially adequate petition. (*Id.* at p. 818.) Here, although the trial court denied Elena's request for a temporary restraining order, it did so pending a hearing, which was held on June 7, 2012. *Gou v. Xiao* is therefore inapposite.

At oral argument, Elena cited *In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487. She asserted that the case holds that a trial court must consider all of the factors set forth in Family Code section 3044 before issuing a domestic violence restraining order. This is incorrect. Family Code section 3044 provides: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence against the other party seeking custody of the child or against the child or the child's siblings within the previous five years, there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to Section 3011. This presumption may only be rebutted by a preponderance of the evidence." (Fam. Code, § 3044, subd. (a).) In subdivision (b), the statute sets forth seven factors which the court must consider in making its custody award. By its express terms, the statute applies only in the context of an award of custody, and *In re Marriage of Fajota* does not hold otherwise. Rather, in that case, the court held that it was an abuse of discretion to fail to consider the presumption when making an award of custody, whether the prior acts of domestic violence resulted in a restraining order or not, so long as the court had made a finding that domestic violence had occurred. (*In re Marriage of Fajota*, at pp. 570, 576-580.)

FACTUAL AND PROCEDURAL HISTORY

On March 4, 2013, Elena filed another request for a domestic violence restraining order, again based on Timothy's abusive emails, text messages and other communications. She also alleged that Timothy was stalking her. Timothy filed a response, denying that he was stalking Elena and stating that his messages to Elena resulted from her "hundreds" of emails to him and to his mother concerning visitation. After a hearing, the court denied the request on March 22, 2013. Elena appealed.

LEGAL ANALYSIS

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DENYING THE REQUEST FOR A RESTRAINING ORDER[17]

We incorporate our previous discussion of the law pertaining to permanent protective orders pursuant to the DVPA. In addition, we note that we review any factual findings made by the trial court under the substantial evidence rule. Under that standard, we uphold the court's finding if it is supported by evidence which is reasonable, credible and of solid value as proof of the factual issue in question. (*Roddenberry v. Roddenberry*, *supra*, 44 Cal.App.4th at p. 651.)

---

[17] Despite our order limiting the issues on appeal to the order denying her request for a permanent restraining order, Elena's brief includes an argument as to the court's denial of her request for a temporary restraining order. We will disregard this argument.

At the hearing on the request for a permanent restraining order, Elena explained that she believed Timothy was stalking her because although she had never provided him with her current address, he knew where she lived and was monitoring her movements. Timothy responded that Elena had moved to a residence two blocks away from his and that she drove a distinctive car that was hard to miss. He implicitly denied that he was monitoring her movements. Elena did not refute his statements. Testimony by a witness whom the court believes is substantial evidence. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Accordingly, the court's finding that Elena had not proven that Timothy was stalking her is supported by substantial evidence, and the court did not abuse its discretion by denying the restraining order based on stalking.

In this case, Elena did not allege that any of Timothy's communications constituted death threats, but she did allege that they were escalating conduct and were seriously disturbing to her. Nevertheless, the court did not abuse its discretion in finding that Timothy's saying mean and hateful things did not amount to domestic violence. As noted in our discussion of Elena's previous request for a restraining order, the court had heard the same contentions at least twice before, and it had had the opportunity to observe the demeanor of both parties. It is not outside the bounds of reason for the court not to credit Elena's claim that Timothy's insults seriously disturbed her peace of mind. Accordingly, we cannot say that it was an abuse of discretion to deny the request.

DISPOSITION

The judgments in case Nos. E054567, E056091 and E058446 are affirmed.  Costs on appeal, if any, are awarded to Timothy Gross.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:


RAMIREZ
P. J.


KING
J.

22