Filed 9/14/23  Marriage of Gan and Sun CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Marriage of LIN GAN and FUXIN SUN. | B322142<br><br>(Los Angeles County Super. Ct. No. 21PDFL00236) |
| LIN GAN,<br><br>     Respondent,<br><br>     v.<br><br>FUXIN SUN,<br><br>     Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Sarah J. Heidel, Judge.  Affirmed.

Fuxin Sun, in pro. per., for Appellant.

Lin Gan Sun, in pro. per., for Respondent.

———————————————

Appellant Fuxin Sun (Father) appeals from an order granting a request for a restraining order under the Domestic Violence Prevention Act (DVPA; Fam. Code, § 6200 et seq.) for the protection of respondent Lin Gan (Mother) and the parties' minor child.[1]  On appeal, Father contends:  (1) the trial court erred by admitting photographs without verification, cross-examination, or argument; (2) the trial court erred by excluding the audio portion of his video recording; and (3) the trial court did not act in an impartial manner.  We conclude the photographs were properly authenticated through Mother's testimony and the trial court provided Father with ample opportunity for cross-examination and argument about the evidence.  The trial court did not exclude the audio from Father's videos, but rather, the audio portion failed to play due to technical difficulties and Father did not make alternate arrangements to provide the audio portion.  After reviewing the record, we conclude the trial court properly balanced its duty to provide due process to Mother, a self-represented litigant in a proceeding under the DVPA, with its duty to act as an impartial arbiter.  We find no abuse of discretion has been shown, and therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY

Mother and Father married and had a child together.  They divorced in February 2022.  On April 5, 2022, Mother, representing herself, filed a request for a domestic violence restraining order (DVRO) against Father for the protection of herself and the child.  The child was 10 years old at the time of

---

[1] All further statutory references are to the Family Code unless otherwise stated.

2

the filing. Mother declared that Father committed abuse in May 2018, August 2019, February 2020, November 2020, and most recently, on April 3, 2022. She requested legal and physical custody, with no visitation for Father. Father also filed a request for a DVRO against Mother based on the April 3, 2022 incident.

A hearing was held on the competing requests on June 6, 2022. Mother represented herself, with the assistance of an interpreter. Father was represented by counsel, with the assistance of a different interpreter.

The trial court asked Mother a series of neutral questions to elicit her testimony, clarify the chronology of events, and understand the relevance of her evidence. Mother showed several photos to the trial court, which were not provided to Father prior to the hearing. Mother testified to the following facts. Mother and Father were watching television in the living room on May 6, 2018. She asked Father to turn down the volume. He became angry and choked her neck, such that she could not breathe. In response to the court's questions about certain photos, Mother stated that she took the photos herself, the photos showed marks on her neck, and they accurately reflected how she looked on the day of the May 2018 incident. Father's counsel objected to the introduction of the photos on the ground that the photos could not be authenticated. The court overruled the objection.

On August 22, 2019, Mother and the child were eating at the table. Father smashed bowls, plates, and cups. Mother showed a photo of the broken dishes to the court. In response to the court's questions, she stated that she took the photo and it accurately depicted how the counter looked on that day. She also showed a photo of a broken cup that she said Father had

smashed on her head and a mark on her hand from a piece of a broken bowl.  Father's counsel again objected to admission of the photos on the basis that the photos could not be authenticated; the trial court overruled the objection.

On July 26, 2020, Mother asked Father to turn down the volume of his music because the child was doing homework in the living room.  Mother went to the bedroom to rest.  The child saw Father kick the door.  Father entered the room, tore Mother's shirt, and sexually assaulted her.  Mother wanted him to stop, but he pressed hard on her arm and left a bruise.  Several days after the incident, she took photos of the damaged door, the bruise on her arm, and her torn shirt.  Father's counsel raised the same objection to admission of these photos, which the court overruled.

On February 26, 2022, Father was very angry when Mother walked out of the house.  He followed her to the street.  When she tried to call a family member, he grabbed her phone, smashed it on the sidewalk, dragged her, and pushed her on the ground. Father slapped her face, causing her eye to bleed.  She took a photo of her eye.

In April 2022, Mother wanted to return to China because her father was ill.  Father came to the home on April 3, 2022.  He had not paid the full amount of child support owed to Mother under the dissolution judgment, but he asked Mother to pay support to him.  He said that he had a gun.  He also said, "I will not allow you to go back to China.  [¶] . . . [¶]  You should be in fear of me.  [¶] . . . [¶]  I will not let you know what I'm going to do, but each day, you will live in misery."  He began to record a video of her with his phone.  She did not want him to take a video of her and asked him to stop.  Father wanted to leave, but she

4

told him to delete the video and then he could go. He pushed her down on the sofa. In the struggle, she hurt her foot, broke her bracelet, and ripped her jacket. She took a photo of her foot that showed a small red dot.

Father's counsel raised the same objection, failure to authenticate, to admission of the photos of Mother's eye and foot, which the court overruled. A police report dated June 2, 2022, was also admitted into evidence.

Father's attorney cross-examined Mother about her testimony, including the incidents depicted in the photos. Father's attorney elicited testimony from Father about the parties' living arrangements and expenses. Father testified that on April 3, 2022, he was cooking dinner for Mother and the child. Mother said she planned to stay in China for three months, while Father took care of the child in the United States. Because Father would be caring for the child, he thought Mother should pay child support to him. Father accused her of going to China for work and hiding income. Mother was angry and pushed his shoulder. Father used his phone to begin taking a video of Mother. Mother blocked the front door to prevent Father from leaving the house, grabbed at his clothes, and grabbed for his phone.

At the hearing, Father's counsel had the videos from the April 3, 2022 incident on a flash drive and Father had the phone with him that he had used to record the videos. With prompting from the court, Father's counsel asked Father questions to lay a foundation for admission of the videos. Mother objected to admission of the videos on the ground that California law prohibits taking video without consent. The court overruled her objection and viewed the videos. Father's counsel asked the court

5

to increase the volume, but the court explained that there was no audio.

Father stated that after he filmed the videos, he left the house and called the police. The police arrived and Father was arrested. The police collected one gun at the time of the arrest, and Father subsequently surrendered another gun. Father asserted that he had never verbally or physically abused Mother. He denied committing any domestic violence on the dates previously mentioned by Mother.

The trial court provided Mother with an opportunity for cross-examination, but had to repeatedly direct Mother to ask questions rather than make statements. The court noted Father's videos supported his testimony that Mother forced him to stay at the house on April 3, 2022. The court asked Mother several questions to understand her plan for childcare when she went to China. At one point, she said that the child's school had a boarding program and she intended the child to stay there, but at another point, she said she thought Father could watch the child.

The trial court provided Father's counsel with an opportunity to examine Mother further, but counsel stated that he had no questions. In closing argument, Father's counsel argued that the video clips supported Father's statements, showed he had been trying to leave the house, and showed Mother falling over the sofa in the struggle to prevent him from leaving the house.

With respect to Father's request for a restraining order, the trial court found Father had not met his burden to establish domestic violence. The court found the videos showed an unhappy situation, but it was not clear from the videos which

party was the aggressor. It was very clear that Mother did not want Father to be filming her, which was a common reaction for people being filmed against their will; however, the evidence did not go far enough to establish that Mother was the aggressor in the situation. Mother presented substantial evidence supporting her allegations of past abuse, which tended to corroborate her statements about this incident. As a result, the trial court denied Father's request for a restraining order.

With respect to Mother's request for a restraining order, the trial court noted that Mother had documented several past instances of abuse. Although Father categorically denied the incidents, he had not provided any explanation for the marks on Mother's neck or the broken door that was kicked in. Father's simple denials of past abuse were not specific enough. The trial court found Mother carried her burden with respect to her request for a restraining order.

The court noted that the child was present during at least some of the incidents, so the court had concerns about visitation and asked Father to provide further argument on the subject of visitation. Father's counsel explained that Father was living in his car because he believed the restraining order to be temporary. Father had expected to move back into the house after the restraining order hearing, but now that the court would be issuing a restraining order protecting mother, father would get an apartment. Father's counsel argued that until Father had an apartment, he could meet with the child in a public area, such as a park.

The trial court denied visitation at present, due to the volatility of the situation. The court suggested video calls once a week, which was acceptable to Father, and the court instructed

Father to file a request for an order modifying visitation once he had a place to live.

The trial court entered a DVRO for three years for the protection of Mother and the child. Father was ordered to move out of the home immediately and not harass, threaten, assault, annoy, or disturb the peace of Mother or the child. He was not to contact Mother or the child, except for brief, peaceful contact with Mother to communicate about the child for court-ordered visits. He was also ordered to stay at least 100 yards away from them, including their home, Mother's workplace and her car, and the child's school, except to briefly and peacefully exchange the child for court-ordered visits. In addition, Father was ordered to enroll in a 26-week batterer intervention program and provide proof of completion to the court. The court entered a child custody and visitation order giving legal and physical custody to Mother, with 15 minutes of weekly visitation for Father through video calls.

Father filed a timely notice of appeal from the restraining order against him.[2]

---

[2] Father has not appealed from the order denying his request for a restraining order. The record on appeal does not include Father's request for a restraining order. The order being appealed that is attached to the case information statement is the DVRO. In his appellate briefs, Father contends that the DVRO should be reversed; he does not additionally contend that his request for a restraining order should have been granted.

# DISCUSSION

## Statutory Scheme and Standard of Review

Under the DVPA, the court may issue a restraining order "if an affidavit or testimony and any additional information provided to the court . . . shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (§ 6300, subd. (a).) A DVRO may be issued to prevent, among other things, "striking, stalking, threatening, sexually assaulting, . . . harassing, telephoning, . . . contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party." (Fam. Code, § 6320, subd. (a).) The purpose of a domestic violence restraining order is not to punish past conduct, but "to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (§ 6220; *In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 117.)

On appeal, we review the denial or grant of a request for a DVRO under the abuse of discretion standard. (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 226.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Marriage of G.* (2017) 11 Cal.App.5th 773, 780.) Therefore, we accept all evidence supporting the trial court's findings as true

and resolve the conflict in favor of the judgment.  (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12.)  If substantial evidence supports the trial court's judgment, "reversal is not warranted even if facts exist that would support a contrary finding."  (*Id.*)

"Error on appeal must be affirmatively shown by the record, and '[w]e presume the trial court knew and properly applied the law absent evidence to the contrary.'  [Citation.]"  (*J.H. v. G.H.* (2021) 63 Cal.App.5th 633, 644.)

## Evidentiary Issues

Father contends the trial court erred by admitting the photos that Mother provided, because the photos were not verified or subject to cross-examination.  This is incorrect.

"Authentication of a writing, including a photograph, is required before it may be admitted in evidence.  [Citations.]  Authentication is to be determined by the trial court as a preliminary fact [citation] and is statutorily defined as 'the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is' or 'the establishment of such facts by any other means provided by law' ([Evid. Code] § 1400)."  (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266.)

"The foundation requires that there be sufficient evidence for a trier of fact to find that the writing is what it purports to be, i.e., that it is genuine for the purpose offered."  (*People v. Goldsmith, supra*, 59 Cal.4th at p. 267.)  "A photograph or video recording is typically authenticated by showing it is a fair and accurate representation of the scene depicted.  [Citations.]  This foundation may, but need not be, supplied by the person taking

10

the photograph or by a person who witnessed the event being recorded. [Citations.] It may be supplied by other witness testimony, circumstantial evidence, content and location. [Citations.] Authentication also may be established 'by any other means provided by law' [citation], including a statutory presumption." (*People v. Goldsmith, supra*, 59 Cal.4th at pp. 267–268.)

In this case, the trial court asked Mother as to each photograph whether she took the photograph herself, when she took it, and what was depicted in the photograph. Mother verified that she took the photographs, and explained the contents. Mother's testimony was sufficient to establish the foundation for admission of the photographs into evidence.

Although Father asserts that he was not provided an opportunity to cross-examine Mother about the evidence or defend against her allegations, the record reflects that Father's counsel was given more than one opportunity to cross-examine Mother about the photographs, and Father was permitted to present his own testimony about the evidence. Father's counsel was also given an opportunity to make a closing statement, through which Father could defend himself against Mother's allegations of past abuse.

Father's counsel did not object to the admission of the photos on any ground other than authentication, and neither Father nor his counsel requested a continuance to review and discuss the photos between them. In order to challenge the admission of evidence on appeal, a party must have made an objection in the trial court with the specific ground for the objection. (*People v. Ramos* (1997) 15 Cal.4th 1133, 1171.) We note Father was aware that Mother's request for a DVRO

claimed multiple incidents of abuse had occurred, including the month and year of each incident. No error has been shown with respect to admission of the photos or Father's ability to contest their authenticity and import.

Father also contends the trial court abused its discretion by excluding the audio portion of the video recordings that he offered. Father asserts the audio would have shown that Mother falsely described the events on April 3, 2022. However, the trial court did not make any ruling to exclude the audio portion of the recordings from evidence; it is clear from the record that the audio simply did not play when the trial court viewed the videos using the thumb drive that Father provided. Upon learning that there was no functioning audio, Father's counsel did not object to the trial court continuing to view the video without audio, nor did Father's counsel offer to provide the court with the audio portion in another format, such as a different device to access the thumb drive, Father's phone to play the original videos, or a transcript of the audio portion. Father's counsel also did not make any offer of proof as to what the audio would have added that was not otherwise apparent. No error has been shown with respect to the videos.

**<u>Duty to Act Impartially</u>**

Father contends the trial court did not perform its duties in an impartial manner. He notes that the trial court asked Mother multiple detailed questions to guide her testimony, but never asked Father any substantive questions as a witness. Based upon our review of the record, we disagree with Father's characterization of the proceedings.

12

Judges are required to perform the duties of their office impartially, competently, and diligently. (*Nuño v. California State University, Bakersfield* (2020) 47 Cal.App.5th 799, 810.) "Impartiality means the absence of bias or prejudice in favor of, or against, particular parties or classes of parties and the maintenance of an open mind in considering the issues presented." (*Ibid.*)

Canon 3.B.(8) of the California Code of Judicial Ethics states: "A judge shall dispose of all judicial matters fairly, promptly, and efficiently. A judge shall manage the courtroom in a manner that provides all litigants the opportunity to have their matters fairly adjudicated in accordance with the law." The advisory comment explains: "The obligation of a judge to dispose of matters promptly and efficiently must not take precedence over the judge's obligation to dispose of the matters fairly and with patience. For example, when a litigant is self-represented, a judge has the discretion to take reasonable steps, appropriate under the circumstances and consistent with the law and the canons, to enable the litigant to be heard." (Cal. Code Jud. Ethics, Advisory Com. com. foll. cannon 3.B.(8).) It is ethical for judges to "explain court procedures, inform a party of the process for securing witnesses, and even inform a party of missing elements of proof or other legal requirements, so long as the court remains impartial and provides such guidance to all parties, whether or not they are represented. A court needs to be very careful, however, when engaging in such activities to avoid becoming an advocate and stepping out of the judicial role." (Rothman, et al., Cal. Judicial Conduct Handbook (4th ed. 2017) § 2:28, pp. 99–100.)

13

California courts have concluded that to provide due process to unrepresented litigants in proceedings brought under the DVPA, a judge is required to play a more active role in developing the facts before determining whether to issue a DVRO. (*Ross v. Figueroa* (2006) 139 Cal.App.4th 856, 861 (*Ross*).) Due process requires "the right to be heard in a meaningful manner." (*In re James Q.* (2000) 81 Cal.App.4th 255, 265.) The role of the judge in a domestic violence proceeding is different than a purely adversarial matter where the parties are represented by skilled and knowledgeable counsel. (*In re Marriage of D.S. & A.S.* (2023) 87 Cal.App.5th 926, 935.) " 'In a purely adversarial setting it is reasonable for the judge to sit back and expect a party's lawyer to know about and either assert or by silence forfeit even the most fundamental of the party's constitutional and statutory procedural rights. But not so in a judicial forum, such as this domestic violence court, which can expect most of those appearing before the court to be unrepresented.' [Citation.]" (*In re Marriage of D.S. & A.S.*, *supra*, 87 Cal.App.5th at p. 935.)

The high percentage of self-represented parties in domestic violence matters, many of whom do not speak English, places a special burden on judges who "cannot rely on the propria persona litigants to know each of the procedural steps, to raise objections, to ask all the relevant questions of witnesses, and to otherwise protect their due process rights." (*Ross*, *supra*, 139 Cal.App.4th at p. 861; *Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420.)

"Our family courts are daily faced with the needs of self-represented litigants, the requirements of judicial neutrality, and the need for judicial efficiency. These interests require delicate balancing, but allowance must be made for the status of the

14

parties appearing before the court.  In a contested restraining order hearing, the trial court is tasked with protecting the fundamental due process rights of self-represented litigants both seeking a restraining order or defending against the request, even when they do not fully understand what those rights encompass." (*In re Marriage of D.S. & A.S., supra,* 87 Cal.App.5th at p. 934.)

Father contends that the trial court treated him as a mere audience member and gave him no opportunity to make any statements or defend himself.  This is incorrect.  It is true that the trial court asked Mother several questions to elicit relevant testimony, avoid inefficiency, and guide her to lay the foundation for evidence that she wished to introduce.  The court's questioning was necessary, because Mother was not represented by counsel and already relying on the assistance of an interpreter to understand the proceedings.  The trial court was not required to ask similar questions of Father directly, as Father's counsel elicited Father's testimony and conducted cross-examination without straying into irrelevant issues.  We note that although the court did not ask Father questions directly, the court prompted Father's counsel to ask certain questions necessary to present Father's case, such as laying a foundation for the videos.  In addition, the trial court asked Father's counsel several questions to understand Father's living situation.  Contrary to Father's characterization of the trial court as biased, the court asked Mother several questions that focused on contradictions in her testimony and the court noted that Father's video supported his testimony that Mother had refused to let Father leave the house.

We conclude from our review of the record that the trial court's treatment of the parties was balanced and fair in light of the court's duty to elicit testimony to provide due process to Mother as an unrepresented party. The court's questions were neutral, and the court provided Father with opportunities to testify, cross-examine Mother, and make a closing statement. No error has been shown.[3]

---

[3] Father's motion filed with this court on August 30, 2023, regarding improper service of Mother's appellate brief, is denied. Even assuming service was improper, and disregarding Mother's brief in its entirety, our opinion would be the same. Based on the appellate record, Father failed to meet his burden to show trial court error. Father also fails to provide any support for the additional, punitive relief sought in his motion, or justify the need for a hearing on the motion; accordingly, his requests are denied.

## DISPOSITION

The June 6, 2022 order granting the request for a restraining order against appellant Fuxin Sun is affirmed. Respondent Lin Gan is awarded her costs on appeal.

NOT TO BE PUBLISHED.

MOOR, J.

We concur:

RUBIN, P. J.

ROTHSCHILD, J.*

---

* Presiding Justice of the Court of Appeal, Second Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.